In the Matter of FRANCES M. CARR, Appellant, v BENJAMIN WARD, as Police Commissioner of the City of New York and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents.

First Department, September 4, 1986

## APPEARANCES OF COUNSEL

*David Jalosky* of counsel *(Jeffrey L. Goldberg* and *Charles H. Dobkin* with him on the brief), for appellant.

*June A. Witterschein* of counsel *(Leonard Koerner* and *Barry P. Schwartz* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

Asch, J.

Petitioner was a probationary police officer. As part of her training, she was required to take a boxing lesson at the Police Academy. In the course of such boxing session in a makeshift gym, she twisted her right knee. When she was being transported by police personnel from the Academy, the stretcher on which she was being borne, collapsed. Petitioner fell to the ground, further injuring her right ankle. She underwent surgical repair of the right knee. Thereafter, an application was made by the Police Commissioner for disability retirement on her behalf. After examination, the Medical Board concluded that petitioner was unable to perform full police duty because of a permanent defect of the right knee directly related to the line-of-duty injury incurred while boxing. It recommended accident disability retirement. Subsequently, the Board of Trustees considered petitioner's application on July 12, 1983, August 23, 1983, March 27, 1984 and May 14, 1984. Petitioner was denied an accident disability pension by a 6 to 6 tie vote at the last meeting and was awarded only ordinary disability. *(See, Matter of City of New York v Schoeck,* 294 NY 559.)

Special Term granted respondents' motion to dismiss the instant CPLR article 78 petition on the ground that petitioner's injury was not the result of an accident, as required by Administrative Code of the City of New York § B18-43.0. We disagree and, therefore, reverse.

Respondents do not deny that petitioner's disability was caused as a result of an injury sustained in the line of duty. However, they maintain that her knee injury, due to her action in stepping back and falling off balance to avoid a punch, was not "accidental" within the meaning of Administrative Code § B18-43.0 and that, therefore, she is not entitled to retire with accident disability benefits. The Court of Appeals has held that in order to obtain accident disability retirement, a petitioner's injury must be the result of a

" 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' ". *(Matter of Lichtenstein v Board of Trustees,* 57 NY2d 1010, 1012.) The court later contrasted "injuries sustained while performing routine duties but not resulting from unexpected events", which are not accidental, with those sustained by "a precipitating accidental event * * * which was not a risk of the work performed", which are. *(Matter of McCambridge v McGuire,* 62 NY2d 563, 568.)*

The unfairness of this approach is illustrated in one of the dissents in *Matter of Knight v McGuire* (94 AD2d 623, 625, *revd* 62 NY2d 563): "Applying the rule as thus enunciated would result in the anomalous and unfair consequence that a policeman, shot while pursuing an alleged perpetrator of a crime, would as a matter of law be excluded from an accidental disability retirement because his injuries were 'sustained during the performance of an employee's regular duties resulting from risks inherent in the task being performed' ".

It seems anomalous, as in the case before us, that a police officer, who is disabled as a result of an "accident" in performing her required duties, is disqualified from being awarded an accident disability retirement.

Fortunately for petitioner in the matter under our consideration, on the actual facts before this court, even under the state of law as it is presently applied, she should succeed in her article 78 petition.

Petitioner herein asserts on appeal that, during a boxing lesson which was conducted in an overcrowded room, not a gymnasium, with no boxing ring, ropes or other barriers, she backed up to avoid a punch and "got tangled up" with a spectator, causing her to fall. This collision with a spectator would obviously be unexpected and out of the ordinary, and therefore accidental. Although these "new" facts were known to the Trustees by July 24, 1983 or earlier, respondents contend that petitioner raised them for the first time in the Supreme Court upon her motion to reargue and renew the earlier determination dismissing her petition. These "new facts" were contained in the record and it appears that the Board of Trustees was apprised of them before it took its action of May 14, 1984. I am inclined to agree with respondents that petitioner should have expressly raised the claim of colliding with a spectator in a crowded gym in the first instance at the Supreme Court, since these facts were conced-

edly known to her at that time. Nevertheless, it is clear that these facts were available to that court.

It also seems significant that the record submitted to the nisi prius court included a transcript of the May 14 hearing of the Board of Trustees. Included in that transcript was the following description of the events preceding the accident from Police Officer Richard Cummins:

"While assigned to the Police Academy mini-gym on the third floor on 5/1/82 at approximately 1730 hours I observed a line of duty injury to P.O. Carr. While boxing with P.O. Cronin, Number 82-46, P.O. Carr and P.O. Cronin were told the following by Instructor P.O. Willie Freeman: 'Hit her in the face and let her know what it feels like to get hit by a real man.' Then he said 'remember company 46 who's rating you.' After those statements by P.O. Freeman, P.O. Carr sustained a severe injury to her right knee. She was then removed on a canvas stretcher to the hospital.

"It should be noted that at the time and place of the occurrence, the mini-gym was extremely overcrowded. Thus turning a simple boxing exercise into a hazardous situation."

Viewed from this perspective, it is clear that petitioner's misstep and fall to avoid *that* punch was not solely "the result of activity undertaken in the performance of ordinary employment duties", but was sudden, fortuitous and out of the ordinary. *(Matter of Lichtenstein v Board of Trustees, supra,* at p 1012.)

As we have been instructed to do by the Court of Appeals, our focus must be not on the petitioner's job assignment, i.e., here boxing in a training exercise, but upon the precipitating cause of injury. *(Matter of McCambridge v McGuire, supra,* at p 569.) Here the precipitating cause of injury was clearly not boxing per se. The accident might well have been stimulated by the anxiety-provoking, brutal and sexist comment of the boxing instructor to petitioner's sparring partner: "Hit her in the face and let her know what it feels like to get hit by a real man", with the implied threat to the partner concerning his rating ("remember company 46 who's rating you") to insure extraordinary effort on his part. This was not the ordinary situation faced by the police recruit in a sparring exercise, simply dodging jabs and hooks of varying degrees of force with no personal animus impelling those blows. Petitioner faced an unusual and unanticipated situation which was certainly out of the ordinary, and therefore her line-of-duty injury was accidental.

The bona fides of the claim are underscored by the fact that petitioner, a young, inexperienced probationer, did not file a line-of-duty report, on or soon after the date of the incident, which set forth that she had also fractured her right ankle. (An amended report was accepted as of April 22, 1985.) This injury was sustained when the stretcher she was carried on collapsed and she fell to the floor. Although petitioner did not seek to magnify her injuries, sadly the police department sought to minimize them. Thus, the commanding officer of the Police Academy, in response to a request for information from the Board of Trustees, specifically noted that she "was prevented from falling off the stretcher." However, there are statements in the record, *inter alia,* by Police Officers Murphy, Gallagher, Hauck and Crosson, made before the Academy report to the Board, attesting to the fact that the stretcher broke and petitioner fell to the ground.

It also seems significant that, at the Board meeting which denied accident disability retirement to petitioner, Trustee Lieutenant Gebhardt asserted that accident disability was approved for a male officer who injured his wrists when he fell backwards during a boxing class at the Police Academy. Lieutenant Gebhardt summed up his feeling about denial of accident disability to petitioner: "I find it very disturbing, in light of the fact that we gave it to this one officer, maybe because he was a male".

It is possible, although not entirely satisfactory, to reconcile the cases in this area. However, there is one distinction in the matter before us which makes a powerful argument for the result which we reach. On the facts presented, it seems clear that the police department itself created the condition which resulted in the accident and ensuing injury. Therefore, it seems quite appropriate that petitioner should be compensated for her line-of-duty injury.

Accordingly, the judgment of the Supreme Court, New York County (Beatrice Shainswit, J.), entered February 13, 1985, which dismissed the petition herein, should be reversed, on the law, without costs, the petition granted and the proceeding remanded to respondents for determination of petitioner's accident disability pension benefits. *(See, Matter of Canfora v Board of Trustees,* 60 NY2d 347, 352.)

SANDLER, J. P. (concurring). I agree with the court that petitioner is entitled to accident disability pension benefits as a matter of law and with much of the analysis that led the

court to that determination. On the other hand, I think it unnecessary to rest determination of this case, even in part, on facts presented long after the initial incident which, although appearing to be credible in considerable part, the Board of Trustees may well have had the right to reject. Limiting myself to the events originally described, and apparently credited by the Board of Trustees, I believe petitioner's claim is well founded.

The most recent discussion by the Court of Appeals of the area of law with which we are concerned appears in *Matter of McCambridge v McGuire* and *Matter of Knight v McGuire* (62 NY2d 563). In *Matter of McCambridge,* a detective performing his duties in the office of the Queens County District Attorney tried to place his hand on the shoulder of another officer to steady himself as he rose from his chair, not realizing that the other officer had moved, and fell to the floor, resulting in a disabling injury to his knee. In *Matter of Knight,* the officer, about to enter his patrol car, slipped on wet pavement, fell backwards and injured his left elbow, resulting in a permanent disability.

The Court of Appeals concluded that both officers were entitled to accident disability benefits as a matter of law, contrary to the determinations of the Board of Trustees.

The court's analysis of its prior decisions, and statement of reasons for the conclusions it reached in both cases, is the latest authoritative discussion of the issues before us. The court said *(supra,* at pp 567-568): "In order to obtain accident disability retirement, a petitioner must establish that he suffered physical or mental incapacitation 'as a natural and proximate result of an accidental injury received in * * * city service' (Administrative Code of City of New York, § B18-43.0). Not every line of duty injury will result in an award of accident disability. The injury must be the result of a ' "sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact." ' *(Matter of Lichtenstein v Board of Trustees,* 57 NY2d 1010, 1012, *supra).* In each of these claims the injuries were sustained in the line of duty and were accidents within the common sense definition adopted in *Lichtenstein.* To be distinguished are injuries sustained while performing routine duties but not resulting from unexpected events, e.g., back strains sustained while putting a tire in the trunk of a city vehicle *(Matter of Menna v New York City Employees' Retirement System,* 59 NY2d 696), while leaning over to place a ticket on a car *(Matter of Lichtenstein*

*v Board of Trustees, supra),* while lifting trash cans *(Matter of Valentin v Board of Trustees,* 59 NY2d 702), or a loss of hearing sustained as a result of practice sessions on the pistol range *(Matter of Schussler v Codd,* 59 NY2d 698). It is critical to the determination in each of the present cases that there was a precipitating accidental event—in one case the loss of balance and fall to the floor; in the other, the slip on the wet pavement and fall which was not a risk of the work performed, as in *Covel (Matter of Covel v New York State Employees' Retirement System,* 84 AD2d 902, mot for lv to app den 55 NY2d 606)."

Let me acknowledge that some of the phrases used by the Court of Appeals may arguably be interpreted as supporting the conclusion reached by Special Term. Thus, it could be said that the activity in which petitioner was engaged was a prescribed one and therefore routine, and that a fall during a boxing lesson which results in an injury is not an unexpected event. However, this approach seems to me to embody an unduly narrow, and reality-distorting, interpretation of phrases used by the Court of Appeals in response to specific and varying factual situations in what has been part of a still ongoing effort to give a commonsense meaning to the words "accidental injury."

The flaw in this approach is pointed up by the fact that logically followed it would yield results difficult not to characterize as absurd. It would logically follow from this interpretation that accident disability benefits would have to be denied a police officer disabled in the line of duty as the result of a shot fired by an armed robber. It is extremely doubtful that the Administrative Code is sensibly applied when it results in a denial of disability benefits to police officers disabled in the discharge of the most hazardous aspects of their duties on the view that these are not unexpected consequences of routine duties, although such benefits have been sustained as a matter of law for someone who lost his balance in his office because of a misjudgment as to the location of another police officer.

So, too, in the instant case, although the activity in which petitioner was engaged was prescribed, it does not seem to me "routine" for a young woman to be required to participate in a boxing lesson with a male opponent in what I take to have been an effort to prepare her physically and psychologically for hostile street confrontations. Nor with regard to a supervised boxing lesson, in which it clearly was not intended that the participants would hurt or injure each other, does it seem

to me an ordinary, expected event that the petitioner should sustain a disabling knee injury of a kind that rarely occurs in the thousands of boxing matches that take place each year between opponents who are in fact attempting to hurt each other.

Applying the "common sense definition" of accident, which is the central effort of the several decisions of the Court of Appeals in this area, it seems to me clear that petitioner here was disabled as a result of an accident, and that she is accordingly entitled as a matter of law to accidental disability benefits.

Kassal, J. (dissenting). I disagree and would affirm the judgment which dismissed the proceeding brought to annul respondents' determination retiring petitioner on ordinary disability benefits.

In concluding that there was an "accident" on May 1, 1982 so as to entitle petitioner to accident disability benefits under Administrative Code of the City of New York § B18-43.0, the majority relies upon petitioner's July 24, 1983 letter, more than 14 months later, to the Lieutenant's Benevolent Association. In that letter, petitioner, for the first time, attempts to change her line-of-duty injury report to indicate that she fell during the boxing exercise when she "stepped back to avoid a punch and got tangled up with the officer behind me causing injury to my right knee." This is inconsistent with her May 1, 1982 line-of-duty injury report, which was prepared and signed on the day of the occurrence, wherein she stated: "I was boxing and I was about to get hit so I moved back and fell off balance causing pain to my right knee."

Noticeably absent is any mention that she tripped after becoming tangled with the leg of a spectator, an important fact. Significantly, the July 24, 1983 letter was prepared after petitioner had been examined by the Medical Board and one month prior to the Board of Trustees consideration of the issue. Her changed position is also inconsistent with a witness statement by the officer with whom petitioner had been sparring, William Cronin, who, on May 1, 1982, reported that, when he went to punch petitioner in the midsection, "she backed off a step or two and her legs buckled and her knee appeared to have gone out of place as she fell to the floor."

In my view, these are two critically conflicting accounts of the occurrence, the resolution of which was a matter for the administrative body, not this court in the exercise of its

limited appellate review. The Board of Trustees, in granting ordinary disability benefits, concluded that there was no "accident", within the "commonsense" definition adopted by the Court of Appeals in *Matter of Lichtenstein v Board of Trustees* (57 NY2d 1010, 1012)—"a 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' ". *(See also, Matter of McCambridge v McGuire* and *Matter of Knight v McGuire,* 62 NY2d 563.)* Plainly, the Board credited petitioner's account offered simultaneously with the occurrence, confirmed by another witness, and not the amended version tendered on further reflection, more than one year later. This was after her first meeting with the Medical Board when, logically, any such significant change should have been made.

Taking into account the limited scope of judicial review, I find no basis to interfere with the administrative findings of fact and determination as to credibility made by the Board of Trustees, which have a rational basis in the record and are neither arbitrary nor capricious. In concluding otherwise, my colleagues have improperly engaged in a fact-finding process which is beyond the restricted scope of our review.

Nor do I find appropriate the majority's overemphasis of the fact that petitioner, a female police officer, was injured while engaged in a boxing exercise with a male police officer. Clearly, such considerations relating to petitioner's sex have no bearing on the issue and, in any event, this was a matter for the Board and not for this court. Similarly inappropriate is the majority's repeated reference to and reliance upon the injury sustained when petitioner fell off the stretcher. No claim has been made by her that she suffered any disabling condition entitling her to benefits as a result of the incident with the stretcher and, in my view, my colleagues have improperly introduced causation factors which are expressly not part of the claim and were not and should not have been considered by the Board.

Justice Sandler's concurring opinion appears premised on the notion that this was an accident because, usually, persons who participate in boxing sessions do not sustain any injury. However, there is nothing in the record to support that speculative conclusion. Aside from being incorrect, this was likewise a matter for the Board, not for a court in the exercise of its appellate review. Further, Justice Sandler's position presupposes that the injury itself is the critical factor in determining whether there was an accident. To the contrary, the dispositive factor is the nature of the activity which

results in the injury and whether the injury was caused by a sudden, fortuitous and unexpected happenstance.

As applied here, there is no question but that, if the Board found that petitioner had been injured as a result of having tripped over the leg of a spectator while engaged in a boxing exercise, this would be an accident, entitling her to corresponding benefits. However, the Board of Trustees, whose province it was to determine the facts, decided that the injury was not occasioned in that manner and that, instead, what occurred was, as related by petitioner in her first line-of-duty injury report, that, as she moved back, she lost her balance and fell to the floor. Plainly, there was no sudden, fortuitous or unexpected event which precipitated the fall and caused the injury. Thus, there was no accident within the "common-sense" *Lichtenstein* definition. Contrary to the view expressed by my colleagues, it is not our function to substitute our judgment and findings in place of those by the administrative body vested with primary jurisdiction to determine these factual matters.

MILONAS, J., concurs with ASCH, J.; SANDLER, J. P., concurs in the opinion of ASCH, J., and concurs in a separate opinion; CARRO, and KASSAL, JJ., dissent in an opinion by KASSAL, J.

Judgment, Supreme Court, New York County, entered on February 13, 1985, reversed, on the law, without costs and without disbursements, the petition granted and the proceeding remanded to respondents for determination of petitioner's accident disability pension benefits. *(See, Matter of Canfora v Board of Trustees,* 60 NY2d 347, 352.)