In the Matter of PAUL J. HIPPLE, Appellant, v BENJAMIN WARD, as Police Commissioner of the City of New York and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents.

First Department, April 13, 1989

### APPEARANCES OF COUNSEL

*Jeffrey L. Goldberg* of counsel *(Goldberg & Jalosky,* attorneys), for appellant.

*Phyllis Arnold* of counsel *(Edward F.X. Hart* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondents.

### OPINION OF THE COURT

SMITH, J.

This appeal raises for review the question of whether petitioner's major depressive disorder, which necessitated his retirement, is due to a precipitating accidental event, entitling him to accidental disability benefits, or is due to injuries sustained while performing routine duties, entitling him to ordinary disability benefits.

Petitioner Paul J. Hipple was appointed as a police officer with the New York City Police Department on October 15, 1969. For much of his 16 years on the force he worked undercover and performed narcotics investigations. During this time petitioner was awarded over 80 citations and is credited with having made approximately 1,500 felony arrests.

By application dated April 1, 1985, petitioner, then 37 years of age, sought accidental disability retirement, stating that "[a]s a result of numerous line of duty injuries while working undercover in anti-crime I suffer from major depressive disorder which prevents me from performing full police duties." Petitioner supported his application with copies of 21 line-of-duty physical injury reports and related documents. These reports indicate that between 1970 and 1984 petitioner suffered line-of-duty injuries which included being twice struck by an automobile, a concussion, knife wounds, a broken nose, abrasions, lacerations, and bites by both dog and man.

Petitioner contends that his depressive disorder is the result of the hazardous, extraordinary nature of his assignments but that manifestation of the illness was precipitated by homosexual advances made towards him in January 1983 while working undercover on a narcotics case. On May 4, 1984 petitioner was stabbed by a perpetrator seeking to escape after an undercover drug arrest. Thereafter, between July 19 and August 10, 1984, petitioner was hospitalized under the care of psychiatrist Dr. J. B. Hayes.

As part of his application for accidental disability, petitioner

submitted a letter dated March 11, 1985 from his psychiatrist, Dr. Hayes, which stated that petitioner suffered from "Major Depressive Disorder" and was being treated with medication and supportive psychotherapy. Dr. Hayes noted that petitioner's record of commendations and line-of-duty injuries suggested that petitioner had been "trying to perform the functions of three or four individuals and demanded more and more of himself to the point that he finally suffered a breakdown in his emotional control" requiring hospitalization. Dr. Hayes indicated that petitioner's condition resembled "the classic situation of psychological exhaustion or 'burn-out' " and that the degree of prolonged and frequent stress on active duty "is responsible to a major degree for his present mental disability." He recommended that petitioner be retired on the basis of a medical disability.

W. David Cheng, a psychologist with the police department's Psychological Services Unit, prepared a report dated April 26, 1985 based, *inter alia,* upon interviews with the petitioner, a review of Dr. Hayes' letter and petitioner's records. Dr. Cheng also rendered a diagnosis of "Major Depressive Disorder" and opined that petitioner "will never be able to function under the stress of police work again." He noted that petitioner had been previously hospitalized for two weeks in 1973 for "Acute Reactive Depression". He further noted that petitioner attributed that prior illness to having been assaulted and robbed by a gang of 22 youths while riding on a bus as a police decoy and to another incident in which he had been physically assaulted after making an arrest, coupled with the break-up with his girlfriend. Dr. Cheng stated that petitioner "met his present wife in 1975, and has been functioning * * * well in the last ten years until this recent episode."

On June 13, 1985, the Police Pension Fund Article II Medical Board (Medical Board) interviewed petitioner, reviewed the aforementioned psychiatric reports, application and supporting documents and concluded that (1) petitioner suffered from a major depressive disorder and was unable to continue police work; (2) while the nature of petitioner's work had been stressful, "there was no specific accident which caused or precipitated this illness", and (3) the ongoing stress of undercover and narcotics work is the result of activity undertaken in the performance of this type of police duty and cannot be considered out of the ordinary. The Medical Board recommended that the application for accident disability re-

tirement be disapproved but that petitioner be retired on ordinary disability.

Petitioner's counsel, by letter of September 6, 1985 wrote to the Board of Trustees of the Police Pension Fund (Trustees) urging that petitioner was suffering from a "post-traumatic stress disorder" as a result of the homosexual advances in 1983, which advances constituted an "accident" for these purposes, and that petitioner suffered from a preexisting condition of "acute reactive depression" which followed his assault in March 1973. Therefore, counsel argued that petitioner should be awarded accident disability benefits.

At its meeting of September 11, 1985, the Trustees remanded the matter to the Medical Board for a determination as to whether or not there exists a "nexus" between the applicant's psychological disability and his enumerated line-of-duty injuries, and to state specifically whether the disability was caused by the petitioner's work.

Thereafter, Dr. Hayes, by letter of October 11, 1985, reiterated his diagnosis of "Major Depressive Disorder" but added that petitioner also suffered from "Post-Traumatic Stress Disorder, Chronic".

The Medical board conducted a further interview of petitioner, considered the October 11th letter of Dr. Hayes and the officer's medical records, and, by a report dated October 17, 1985 again recommended the denial of accidental disability based upon its conclusions that (1) "[t]he repeated line of duty injuries suffered over the years by this officer have not specifically caused his psychiatric illness"; (2) "[t]he 1973 incident in which the officer * * * was beaten and robbed * * * did in retrospect, appear to have precipitated a previous psychiatric illness, namely 'reactive depression,' for which the officer was hospitalized, treated and from which he recovered," returned to full duty and had a "subsequent history of excellent police duty"; (3) it was "unable to causally relate the breakdown and the depression to any specific accident"; and (4) stress associated with the petitioner's assignments in undercover and in narcotics was " 'normal stress,' which is appropriate to the particular assignment," "not out of the ordinary" and "not 'accidental.' " The Medical Board stated that "[t]here is clearly an interaction between the officer's genetic and personality structure on the one hand and the stress of his police duty assignments on the other."

At its meeting of April 9, 1986, the Trustees again consid-

ered petitioner's application for accidental disability retirement and voted 6 to 6 to disapprove the application. In consequence of that vote, petitioner was retired on ordinary disability.

Petitioner, thereafter, commenced the instant proceeding pursuant to CPLR article 78 seeking, *inter alia*, to vacate respondent Trustees' determination as arbitrary and capricious, and to remand the application for reconsideration of his request for accidental disability benefits. The IAS court noted that both the Medical Board and the Board of Trustees had twice thoroughly evaluated petitioner's application for accidental disability benefits and found that petitioner had not shown that any of the line-of-duty injuries which individually or cumulatively caused his disabilities was the result of an "accident" within the meaning of the applicable statute. It concluded that "[u]nder the constraint of *Lichtenstein [Matter of Lichtenstein v Board of Trustees,* 57 NY2d 1010 (1982)] * * * sufficient evidentiary support exists for the denial of accidental disability retirement benefits" and dismissed the petition.

This appeal followed.

It is petitioner's argument upon appeal that respondents failed to consider his claim of "post-traumatic stress disorder" and, contrary to existing medical and psychiatric evidence, erroneously believed that causation in cases of accidental disability must be related to a single accident. Petitioner argues that his 1973 line-of-duty injury was an "accident" which triggered his initial psychological problems and that while he initially returned to normal behavioral patterns, subsequent line-of-duty occurrences, including the homosexual advance and the May 4, 1984 stabbing, resulted in a final "assault on his psychological equilibrium" requiring rehospitalization. Citing *Matter of Petrella v Board of Trustees* (141 AD2d 361 [1st Dept 1988]), petitioner requests that the matter be remanded for consideration of his claim of "post-traumatic stress disorder".

In order to be eligible for retirement on an "accidental disability" pension, petitioner must establish that he suffered physical or mental incapacitation "as a *natural and proximate result* of an *accidental injury* received in * * * city-service" (emphasis added). (Administrative Code of City of New York § 13-252 [formerly § B18-43.0].) Such line-of-duty injury must be the result of a "sudden, fortuitous mischance, unexpected,

out of the ordinary, and injurious in impact." *(Johnson Corp. v Indemnity Ins. Co.,* 6 AD2d 97, 100 [1st Dept 1958], *affd* 7 NY2d 222 [1959]; *Matter of McCambridge v McGuire,* 62 NY2d 563, 567-568 [1984]; *Matter of Lichtenstein v Board of Trustees,* 57 NY2d 1010, *supra.)* An injury which occurs in the absence of an unexpected event but rather as a result of activity undertaken in the performance of ordinary employment duties, considered in light of the particular employment in question, is not an "accidental injury" within the meaning of the Administrative Code. *(Matter of Lichtenstein v Board of Trustees, supra,* 57 NY2d, at 1012; *Matter of Evans v City of New York,* 145 AD2d 361.) Hence, our courts have held that accidental retirement benefits will be denied for injuries sustained while performing routine duties but not result- ing from unexpected events. For example, such benefits have been denied for stress-related ulcerative colitis *(Matter of Evans v City of New York, supra);* back strains sustained while putting a tire into the trunk of a city-owned vehicle *(Matter of Menna v New York City Employees' Retirement Sys.,* 59 NY2d 696 [1983]), or while leaning over to place a ticket on a car windshield *(Matter of Lichtenstein v Board of Trustees, supra),* or while lifting trash cans *(Matter of Valentin v Board of Trustees,* 59 NY2d 702 [1983]), or while removing barriers at a concert in Central Park *(Matter of Del Grosso v Board of Trustees,* 113 Misc 2d 440 [Sup Ct, NY County 1982]); and a knee injury sustained as a result of a fall in an abandoned building *(Matter of Tarr v Board of Trustees,* 98 AD2d 687 [1st Dept 1983]).

On the other hand, an "accidental injury" has been held to have occurred where a police officer lost his balance and fell to the floor twisting his knee, where an officer while entering his patrol car slipped on a wet pavement damaging an elbow *(Matter of McCambridge v McGuire, supra)* and where an officer sustained a knee injury while falling in an overcrowded gym during a boxing lesson at the police academy *(Matter of Carr v Ward,* 119 AD2d 163 [1st Dept 1986]).

Petitioner bears the burden of proving that a service-related "accident" caused his disability. *(Matter of Tarr v Board of Trustees, supra,* at 688; *Matter of Christian v New York City Employees' Retirement Sys.,* 83 AD2d 507, 508 [1st Dept 1981], *affd* 56 NY2d 841 [1982]; *Matter of Drayson v Board of Trustees,* 37 AD2d 378, 380 [1st Dept 1971], *affd* 32 NY2d 852 [1973].) The Trustees are entitled to rely on the Medical Board's recommendations as to causation, an issue reflecting

on matters of medical judgment, even in the face of conflicting evidence. *(See, Matter of Tobin v Steisel,* 64 NY2d 254, 259 [1985]; *Matter of Scotto v Board of Trustees,* 76 AD2d 774, 776 [1st Dept 1980], *affd* 54 NY2d 918 [1981]; *Matter of Christian v New York City Employees' Retirement Sys., supra,* 83 AD2d, at 508.)

Ordinarily, the decision of the Board of Trustees as to whether or not a police officer's disability is the result of an "accidental injury" will not be disturbed unless the Trustees' factual findings are not supported by substantial evidence or unless its final determination is arbitrary and capricious. *(Matter of Canfora v Board of Trustees,* 60 NY2d 347, 351 [1983].)* The denial of accidental disability benefits as a consequence of a tie vote of the Trustees, as in the instant case, can be set aside upon judicial review only if the court concludes that the retiree is entitled to the greater benefits as a matter of law. *(Matter of Canfora v Board of Trustees, supra,* 60 NY2d, at 352; *Matter of McCambridge v McGuire, supra,* 62 NY2d, at 568.)

Upon examination of the record in this case, it cannot be said that petitioner's disability was the natural and proximate result of one or more service-related "accidents". It must be emphasized that the Medical Board specifically found that it was unable to relate petitioner's illness to any "accident". Thus, the decision of the Trustees denying accidental disability benefits as a consequence of a tie vote must stand.

Petitioner's reliance upon this court's recent decision in *Matter of Petrella v Board of Trustees (supra)* is misplaced. In *Petrella,* the Medical Board determined that the applicant had been suffering from a long-present borderline personality disorder prior to the line-of-duty shooting which he claimed precipitated his then debilitating depressive disorder. We held that in concluding merely that Petrella suffered from a long-present borderline personality disorder and rejecting psychiatric evidence of a work-related trauma, it appeared that both the Medical Board and the Trustees had neglected to consider the established causation rule that " '[a]n accident which precipitates the development of a latent condition or aggravates a preexisting condition is a cause of disability within the meaning of [the] Administrative Code * * * *(Matter of Tobin v Steisel,* 64 NY2d 254, 257 * * * 259).' " *(Matter of Petrella v Board of Trustees, supra,* 141 AD2d, at 363.) However, the issue herein is not causation but rather whether the homosexual incident or any of the line-of-duty injuries sustained by

petitioner were "accidents" within the meaning of the Administrative Code. Even if as petitioner claims on appeal, he suffered from a latent mental disorder as a result of the 1973 beating and illness, he unfortunately has failed to establish that a subsequent "accident(s)" aggravated or precipitated manifestation of this preexisting condition. Moreover, the Medical Board specifically determined that petitioner had recovered from the 1973 illness.

As was the motion court, this court is sympathetic to the plight of Police Officer Hipple, an outstanding police officer for whom the accumulated stress of many years in undercover narcotics work has had an adverse impact upon his mental health. It is indeed ironic that both this petitioner and a police officer who suffers a debilitating gun shot wound while pursuing a criminal may be limited to ordinary disability retirement benefits (see, concurring opn of Justice Sandler *Matter of Carr v Ward,* 119 AD2d 163, 169, *supra),* while an officer who slips on a wet pavement while getting into a police vehicle or one who falls after losing his balance is eligible for more generous accidental disability retirement benefits. *(See, Matter of Hipple v Ward,* Sup Ct, NY County, Aug. 3, 1987, Danzig, J., at 6.)

Accordingly, judgment of the Supreme Court, New York County (Ethel Danzig, J.), entered on or about August 3, 1987, which denied the application of petitioner to annul respondents' denial of accidental disability benefits and dismissed the petition, should be affirmed, without costs.

KUPFERMAN, J. P., SULLIVAN, KASSAL and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on or about August 3, 1987, unanimously affirmed, without costs and without disbursements.