*454 OPINION OF THE COURT
Rolando T. Acosta, J.
Background
This proceeding was instituted by petitioner, a New York City police officer, to challenge a determination by respondents denying petitioner accidentad disability retirement (ADR). Petitioner was diagnosed with HIV in May 1999, and approximately two years later, on March 29, 2001, submitted an application for ADR under the provisions of General Municipal Law § 207-p, which state that a police officer who contracts HIV (where the employee may have been exposed to a bodily fluid of a person under his or her care or treatment, or while the employee examined, transported, rescued or otherwise had contact with such person, in the performance of his or her duties) is “presumed to have contracted such disease as a natural and proximate result of an accidental injury received in the performance and discharge of his or her duties and not as a result of his or her willful negligence, unless the contrary be [proved] by competent evidence.” Petitioner established that she had been bitten and punched in both eyes while placing a perpetrator under arrest. In addition, she was in constant contact with bodily fluids of perpetrators in the subways and streets of New York City.
On the same date that petitioner submitted her ADR application, the Police Commissioner submitted an application for ordinary retirement disability (ORD) on petitioner’s behalf, due to her “viral infection; polycystic renal disease; automatic dysfunction.”
On July 18, 2001, the Medical Board recommended disapproval of petitioner’s ADR and the Police Commissioner’s application for ORD. According to the Board, even though petitioner was HIV-positive, there was no evidence of opportunistic infection.
Petitioner was examined eight days later, on July 26, 2001, by an infectious disease specialist, whose notes indicate that petitioner’s Tb4 count was less than 200 giving her the diagnosis of AIDS. Petitioner also suffered from a kidney disease, had been intolerant of HIV medications, had a persistent cough that was nonresponsive to multiple medications, and had chronic fatigue. A September 6, 2001 examination by the same specialist revealed that petitioner also suffered from “autonomic nervous dysfunction,” had an ovarian cyst, had been recently hospitalized for severe headaches and possible aseptic meningitis, was *455 light-headed, suffered from multiple joint pains, and was being followed by a gynecologist for papilloma virus and abnormal pap smears. According to the specialist, “[although the patient has a relatively chronic condition, she has intermittent exacerbations making it difficult for her to function on a consistent level as a police officer.”
On February 27, 2002, petitioner was again examined by the Medical Board, which reaffirmed its previous decision because there was “insufficient evidence to substantiate that [petitioner] has a disability which would preclude her from performing the full duties of a New York City police officer.”
On June 28th, petitioner submitted a second application for ADR, following two examinations by her specialist. About a month later, on September 9, 2002, the Board of Trustees reviewed petitioner’s case and concurred with the Medical Board’s recommendation to disapprove petitioner’s application for ADR and the Police Commissioner’s application for ORD in boiler plate form.
On November 7, 2002, petitioner was examined by a neurologist, who stated in her report that petitioner is a “33-year-old woman with HIV infection and [polycystic] kidney disease who comes in with sensory neuropathy of the stocking glove distribution likely related to her underlying HIV infection.” A February 19, 2003 examination by her infectious disease specialist revealed in her notes that petitioner’s HIV seems to be under better control, but that she had “some degenerative disease” in her foot, was being seen for cervical spine disease, and was complaining of “intermittent dull right-sided abdominal pain.”
The Medical Board examined petitioner again on March 26, 2003, where it acknowledged that petitioner suffered from AIDS, but deferred making a final decision pending the receipt of electromyography to determine whether petitioner suffered from neuropathy in her right foot. A July 1, 2003 report by petitioner’s infectious disease specialist discussed petitioner’s medication regimen for management of her HIV and outlined the potential side effects of such medications, including potential for bone marrow suppression and hepatitis. The specialist concluded that “there is concern of progressive renal insufficiency with her polycystic disease and the future of her HIV disease remains unknown.” This report was followed by an August 21, 2003 report from a New York City Police Department (NYPD) surgeon, who after summarizing petitioner’s condition, found that because of petitioner’s advanced disease, she “is *456 medically unfit to work in any capacity for the New York City [P]olice [Department.”
In fact, an October 14, 2003 report from petitioner’s infectious disease specialist stated that petitioner had been off her HIV medications for several months because of “failure of her most recent regimen” and that they were struggling to find an alternative regimen that petitioner could tolerate.
Notwithstanding overwhelming evidence of petitioner’s disability, including the NYPD surgeon’s finding that petitioner was not medically fit for duty as a police officer, on October 15, 2003, the Medical Board again denied petitioner’s request for ADR and the Police Commissioner’s request for ORD, because petitioner “does not have a retroviral problem.” The Medical Board did not address any other diseases and conditions stated by other doctors. Two months later, on December 10, 2003, the Board of Trustees reviewed petitioner’s case and once again rubber-stamped the Medical Board’s recommendation.
Petitioner argues in this CPLR article 78 proceeding that the decision to deny her ADR was arbitrary and capricious, in particular because the Medical Board had approved the request for ADR in at least one other case where the officer had similar symptoms. A copy of the Medical Board’s decision in the similar case was attached to the petition.
Analysis
In order to be eligible for retirement on an “accidental disability” pension, petitioner must establish that she suffered physical or mental incapacitation “as a natural and proximate result of an accidental injury received in . . . city-service” (Administrative Code of City of NY § 13-252; see also Matter of Hipple v Ward, 146 AD2d 201, 205 [1st Dept 1989]). Disability is defined in the Code as “disqualified, physically or mentally, for the performance of his or her duties.” (Administrative Code of City of NY § 13-206 [a]; see also § 13-252 [physically or mentally incapacitated for the performance of city-service].)
Although generally, petitioner bears the burden of proving that a service-related “accident” caused her disability (see Matter of Hipple v Ward, supra, 146 AD2d at 206), in cases where the officer has “contrac[ted] HIV (where the employee may have been exposed to a bodily fluid of a person under his or her care or treatment, or while the employee examined, transported, rescued or otherwise had contact with such person, in the performance of his or her duties),” it is “presumed [that the offi *457 cer] contracted such disease as a natural or proximate result of an accidental injury received in the performance and discharge of his or her duties and not as a result of his or her willful negligence, unless the contrary be [proved] by competent evidence.” (General Municipal Law § 207-p.)
In a CPLR article 78 proceeding, the Medical Board’s finding will be sustained unless it lacks a rational basis, or is arbitrary or capricious — which in the context of a disability determination means that the Medical Board’s determination will be sustained if it is based on “some credible evidence.” (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760-761 [1996]; see also Matter of Rodriguez v Kelly, 8 AD3d 70 [1st Dept 2004].)
Here, the Medical Board’s determination that petitioner does not have a “retroviral problem which would prevent her from performing the full duties of a New York City police officer” is not supported by “some credible evidence.” Indeed, the Medical Board’s determination is totally irrational, arbitrary and capricious. First, petitioner concededly has full-blown AIDS and the medical reports indicate that her condition is deteriorating. Second, whether her AIDS can be defined solely as a “retroviral problem” does not take away from the fact that she has numerous other medical problems, including polycystic kidney disease, degenerative disease in one of her feet, cervical spine disease, suffers from fatigue, anxiety, and abdominal pain (she has an ovarian cyst), and is light-headed. The Medical Board, however, failed to address these other medical conditions, which in addition to petitioner’s AIDS, clearly prevent her from performing her duties as a police officer, as even a NYPD surgeon reported.* Thus, for the Medical Board to base its determination of disability on its finding that there is no “retroviral problem” is not only irrational, but perplexing.
In addition to not being supported by “some credible evidence,” the Medical Board’s determination is also arbitrary inasmuch as it found an officer with similar conditions to be *458 disabled, and indeed, retired the officer with ADR In that case, like the present one, the officer felt fatigue all of the time, had kidney problems, and had a history of HIV (See exhibit V) The penultimate paragraph in that report, preceding the Medical Board’s recommendation, states:
“On physical examination today, the officer is [a] well-nourished, well-developed female. Her blood pressure is 108/80. Her pulse was 76 bpm. Eyes, ears, nose and throat were negative. There is no evidence of jaundice. Neck: No glands, masses or pulsations. The thyroid was not palpable. Lungs were clear to P & A. The heart was 76 bpm with regular sinus rhythm. There were no murmurs. A2 was greater than P2. The abdomen was soft and nontender. There were no masses. The liver could be felt one finger breath below the costal margin, and it was smooth and nontender. There was no inguinal adenopathy. Extremities do not reveal any evidence of edema.”
Petitioner’s report had a similar, and in fact almost word-for-word, paragraph:
“On physical examination today, the officer is a well-nourished, well-developed white female. Her blood pressure is 112/82. Eyes, ears, nose and throat were negative. The[re] is no jaundice. The neck was soft and supple. There were no thyroid or lymph node enlargement. The lungs were clear to P & A. The heart was 72 bpm. There was regular sinus rhythm. A2 is greater than P2. The liver is percussed two fingers below the costal margin and nontender; it is smooth. The spleen is felt two fingers below the costal margin, and is nontender. The abdomen is otherwise normal. There are no enlarged lymph nodes in the inguinal region. There is no evidence of peripheral edema. With regards to the officer’s lower extremities, she has a patchy distribution of decreased distinction between sharp and dull on the left side of the lateral aspect of the calf and along the lateral margin of the foot. Her patella and ankle jerks are normal. She has normal dorsalis pedis and posterior tibial pulsations. There is no peripheral edema.”
Notwithstanding the almost word-for-word examination results and the fact that petitioner clearly had even more medical problems than the officer who received ADR {compare Medical *459 Board’s Oct. 15, 2003 report for petitioner, with Medical Board’s report under exhibit V), petitioner was found not to be disabled. This determination is therefore arbitrary and capricious in addition to being unsupported by “some credible evidence.”
Although not addressed by the Medical Board inasmuch as it did not find petitioner disabled, her disability was accidental. Indeed, there is unrefuted evidence that petitioner had been bitten and punched in both eyes while placing a perpetrator under arrest. In addition, she was concededly in constant contact with bodily fluids of perpetrators in the subways and streets of New York City. These facts establish even more than what is required under General Municipal Law § 207-p’s “may have been exposed” language. (Cf. Matter of Collins v New York City Employees’ Retirement Sys., 1 Misc 3d 677 [Sup Ct, Kings County 2003] [similarly worded statute, General Municipal Law § 207-o does not require proof of exposure to bodily fluids; it applies where the employee may have been exposed to a bodily fluid].) Therefore, petitioner is presumed to have contracted HIV “as a natural and proximate result of an accidental injury received” in the performance and discharge of her duties (Matter of Starnella v Bratton, 92 NY2d 836, 838 [1998]; Matter of McCambridge v McGuire, 62 NY2d 563, 567-568 [1984]), and, thus entitled to ADR unless the Board proves by competent evidence that she contracted AIDS by willful negligence.
In short, the law gives credence to administrative bodies exercising their expertise. Underlying this deference is that the administrative bodies are acting in good faith and making decisions based on the evidence before them. Thus, although decisions cannot be irrational, arbitrary or capricious, that is precisely what we have here. The Board’s decision not only robs this City’s finest of her dignity, but ignores the reality reflected in the officer’s AIDS diagnosis and unrefuted numerous opportunistic diseases identified by petitioner’s doctors and the Police Department’s own surgeon, who finds that petitioner is unfit for any duty as a New York City police officer. Respondent has not opposed petitioner’s application, relying instead on the deference it is regularly accorded. This court, however, simply cannot ignore reality under the guise of administrative deference.
Accordingly, it is hereby adjudged that the December 10, 2003 decision by the Board of Trustees is annulled and vacated and *460 this matter is remanded to the Board of Trustees for further deliberations consistent with this decision.
[Portions of opinion omitted for purposes of publication.]

 This court is mindful of the fact that where the medical evidence is subject to conflicting interpretations, the court must “defer to the expertise of the Medical Board in resolving such conflict and to the judgment of the Board of Trustees in adopting the Medical Board’s findings.” (Matter of Mulheren v Board of Trustees of Police Pension Fund, Art. II, 307 AD2d 129, 131 [1st Dept 2003].) The medical evidence in this case, however, is not subject to conflicting interpretations inasmuch as the Medical Board’s interpretation was not supported by “some credible evidence.” The only credible evidence supported petitioner’s claim.