STEIN, J.
In these appeals, we are asked to determine whether petitioners, both first responders, established entitlement to accidental disability retirement benefits by demonstrating that they were incapacitated "as the natural and proximate result of an accident ... sustained in ... service" ( Retirement and Social Security Law § 363 [a] [1] ). Because petitioners did not demonstrate that their injuries were caused by sudden, unexpected events that were not risks inherent in their ordinary job duties, we conclude that neither petitioner established entitlement to the benefits sought. Therefore, we affirm in Matter of Kelly v. DiNapoli and reverse in Matter of Sica v. DiNapoli.
I.
Matter of Kelly
James J. Kelly was a Town of Orangetown police officer who was on duty when Hurricane Sandy struck the area. After he was directed by his supervisor to take *446 cover and respond only to life-threatening calls, Kelly and another officer were dispatched to a residence on which a tree had fallen, trapping the residents inside. Upon arriving at the residence, Kelly observed that a tree had knocked down half of the roof, a rear wall and a side wall, that rain was pouring into the residence, that there were downed wires, and that the structure appeared to be "very unstable."
Kelly called the fire department-to request that the department's technical response unit perform the actual rescue-and sought ambulances and additional police personnel. Given the extreme conditions created by the hurricane, Kelly estimated that it would take approximately two hours for the technical response unit to arrive, and other officers were instructed not to respond. Therefore, he entered the unstable building in response to "blood-curdling screams" for help.
Upon entering the structure, Kelly saw that a resident "had been impaled and put through the floor into the basement."
***679 Kelly climbed on top of a pile of debris and started throwing debris out of the back of the house in order to rescue the people who were underneath the pile. He felt a pain in his shoulder, but ignored it in an attempt to free the residents. Shortly thereafter, a rafter that was dangling from the portion of the roof that was still intact began to fall, and Kelly reached up to brace the rafter, further injuring his shoulder and neck. Kelly explained that, if he had not braced the falling rafter, debris would have landed on the other officer who was assisting in digging out the family. Kelly and the other officer were able to rescue one of the residents and partially extricate another during the time that they were in the structure before the fire department arrived. Kelly then exited the residence and the fire department extricated the remaining resident.
Following a hearing on Kelly's application for accidental disability retirement benefits based upon the injuries he sustained during the rescue, a Hearing Officer determined that the injury-causing incident was an "accident" within the meaning of Retirement and Social Security Law § 363 because "[e]ntering that unstable structure was not within [petitioner's] regular and usual duties." Respondent Comptroller overruled the Hearing Officer's determination, concluding that Kelly failed to meet his burden of proving that his injury resulted from an "accident."
Kelly then commenced this CPLR article 78 proceeding, challenging respondent's determination. Upon transfer, the Appellate Division confirmed the determination and dismissed the proceeding, with two Justices dissenting ( 137 A.D.3d 1470, 28 N.Y.S.3d 145 [3d Dept. 2016] ). The Court held that Kelly's injury resulted from a risk inherent in his employment as a police officer, whose duty it was to assist injured persons, and rejected any argument that Kelly's response was outside the scope of his job duties, noting that his supervisors had instructed him to respond to emergency calls involving life and limb (see id. at 1471-1472, 28 N.Y.S.3d 145 ).
Petitioner appealed to this Court as of right.
Matter of Sica
Pat Sica, a firefighter with the City of Yonkers, was injured when responding to a medical emergency-a 911 call indicating that an individual was having difficulty breathing at a local supermarket. Sica and his other crew members found two unconscious individuals, one inside and one outside a walk-in freezer. Sica performed cardiopulmonary resuscitation for approximately ***680 25 to 30 minutes on the individual inside the freezer and then assisted the other unconscious individual. *447 Sica did not smell any odors or chemicals; nor did he see or hear anything indicating that chemicals might be involved in the incident. However, shortly after assisting the unconscious individuals, Sica began to feel nauseous and light-headed and was taken to the emergency room. It was later determined that he had been exposed to toxic gases, which were present in both the supermarket and the walk-in freezer as a result of the individuals cleaning the freezer.
Sica applied for accidental disability retirement benefits, claiming that he had suffered permanent injuries as a result of the incident. At the ensuing hearing, Sica acknowledged that his duties as a firefighter included responding to calls requesting emergency medical assistance, and that he had received training in handling chemical spills or leaks, as well as hazardous materials. The Hearing Officer concluded that the incident constituted an "accident," because "the injury resulted from an unexpected and unforeseeable event, which arose during the performance of [Sica's] routine employment duties." Respondent Comptroller overruled the Hearing Officer's determination, concluding that Sica failed to meet his burden of proving that his injury resulted from an accident sustained in service.
After Sica commenced the instant CPLR article 78 proceeding, upon transfer, the Appellate Division annulled respondent's determination and remitted the matter to respondent to consider the issues raised by Sica regarding the application of the "Heart Presumption" contained in Retirement and Social Security Law § 363-a ( 141 A.D.3d 799, 801, 36 N.Y.S.3d 259 [3d Dept. 2016] ). The Court concluded that Sica "was not responding to a fire that presented the inherent and foreseeable risk of inhaling toxic gases or smoke," and that he "was neither aware that the air within the supermarket contained toxic chemical gases, nor did he have any information that could reasonably have led him to anticipate, expect[,] or foresee the precise hazard when responding to the medical emergency at the supermarket" ( id. at 800, 36 N.Y.S.3d 259 [citations omitted] ).
This Court granted respondent leave to appeal.
II.
Retirement and Social Security Law § 363 (a) (1) provides that a member of the police and firefighters' retirement system
***681 "shall be entitled to an accidental disability retirement allowance if, at the time application therefor is filed, [the member] is ...
[p]hysically or mentally incapacitated for performance of duty as the natural and proximate result of an accident not caused by [the member's] own willful negligence sustained in such service."[1]
*448 This Court first defined "accident" in Matter of Lichtenstein v. Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y. Art. II,"adopt[ing] the commonsense definition of a 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' " ( 57 N.Y.2d 1010, 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 [1982], quoting Arthur A. Johnson Corp. v. Indemnity Ins. Co. of N. Am., 6 A.D.2d 97, 100, 175 N.Y.S.2d 414 [1st Dept. 1958], affd 7 N.Y.2d 222, 196 N.Y.S.2d 678, 164 N.E.2d 704 [1959] ). Stated otherwise, "an injury which occurs without an unexpected event as the result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury" ( id. ). Two years later, the Court clarified in Matter of McCambridge v. McGuire that it is "error ... [to] focus[ ] on the petitioner's job assignment, not on the precipitating cause of injury" ( 62 N.Y.2d 563, 567, 479 N.Y.S.2d 171, 468 N.E.2d 9 [1984] ). Rather, a petitioner is ***682 entitled to accidental disability retirement benefits when the injury was caused by "a precipitating accidental event ... which was not a risk of the work performed" ( id. at 568, 479 N.Y.S.2d 171, 468 N.E.2d 9 ). In defining "accident," both Lichtenstein and McCambridge relied upon Matter of Covel v. New York State Employees' Retirement Sys., 84 A.D.2d 902, 444 N.Y.S.2d 776 (3d Dept. 1981), lv denied 55 N.Y.2d 606, 449 N.Y.S.2d 1025, 434 N.E.2d 720 (1982), which upheld the denial of benefits to a school custodian who slipped on oil that he regularly applied to a floor that he was dust mopping; the Court reasoned that "injuries ... sustained during the performance of an employee's regular duties and result[ing] from risks inherent in the task being performed" are not accidents ( id. at 902, 444 N.Y.S.2d 776 ).
Under Lichtenstein and McCambridge, an injury-causing event is accidental when it is sudden, unexpected and not a risk of the work performed, but the "focus[ ]" of the determination must be on "the precipitating cause of injury," rather than on "the petitioner's job assignment" ( McCambridge, 62 N.Y.2d at 567, 479 N.Y.S.2d 171, 468 N.E.2d 9 ). Thus, in Lichtenstein, the Court upheld the denial of benefits where the petitioner, a police officer, was injured while leaning over the hood of a car to place a traffic ticket on the windshield (see 57 N.Y.2d at 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 ; see also Matter of Valentin v. Board of Trustees of N.Y. City Employees' Retirement Sys., 59 N.Y.2d 702, 463 N.Y.S.2d 438, 450 N.E.2d 244 [1983], affg for reasons stated below 91 A.D.2d 916, 457 N.Y.S.2d 543 [1st Dept. 1983] [application denied where sanitation workers sustained disabling injuries while lifting heavy bags and trash cans]; Matter of Schussler v. Codd, 59 N.Y.2d 698, 463 N.Y.S.2d 419, 450 N.E.2d 225 [1983] [police officer's application denied where loss of hearing resulted from weekly practice sessions on pistol range];
*449 Matter of Menna v. New York City Employees' Retirement Sys., 59 N.Y.2d 696, 463 N.Y.S.2d 438, 450 N.E.2d 244 [1983], affg for reasons stated below 91 A.D.2d 537, 457 N.Y.S.2d 255 [1st Dept. 1982] [application denied where Housing Authority patrolman was injured while placing a spare tire into trunk of patrol car] ). In contrast, in McCambridge, the Court held that the petitioners had demonstrated that their injuries were accidental as a matter of law[2] where they were injured (1) getting up from a desk when the officer on whom the petitioner was leaning suddenly ***683 moved away, causing the petitioner to fall, and (2) after slipping and falling on wet pavement while getting into a patrol car on a rainy day (see 62 N.Y.2d at 568, 479 N.Y.S.2d 171, 468 N.E.2d 9, revg 94 A.D.2d 623, 632, 462 N.Y.S.2d 23 [1st Dept. 1983] ).
Thereafter, applying the principles set forth in McCambridge and Lichtenstein, this Court concluded as a matter of law in Matter of Pratt v. Regan that a firefighter "coming down hard upon the other foot in a pothole" after "[c]atching a heel on a running board and thus losing balance" was not only "sudden" but also an "unexpected event" because it was not "a risk of the work performed" ( 68 N.Y.2d 746, 747-748, 506 N.Y.S.2d 328, 497 N.E.2d 695 [1986] ; see Matter of Pastalove v. Kelly, 120 A.D.3d 419, 420-421, 991 N.Y.S.2d 39 [1st Dept. 2014] ; Matter of Sullivan v. Regan, 133 A.D.2d 993, 994, 521 N.Y.S.2d 145 [3d Dept. 1987] ). In contrast, even when an incident "constituted a sudden, inopportune, fortuitous mischance," we upheld a denial of benefits on the ground that the "event ... was a risk inherent in [the] petitioner's regular duties" and, therefore, could not be deemed "unexpected" (Matter of Hambel v. Regan, 174 A.D.2d 891, 892-893, 571 N.Y.S.2d 355 [3d Dept. 1991], affd for reasons stated below 78 N.Y.2d 1092, 578 N.Y.S.2d 871, 586 N.E.2d 54 [1991] [siren sounding when officer was only 60 feet from it was sudden but not unexpected; rather it was a risk inherent in the officer's regular duties]; see also Matter of Kehoe v. City of New York, 81 N.Y.2d 815, 817, 595 N.Y.S.2d 379, 611 N.E.2d 280 [1993] [upholding a denial of benefits because "(n)o evidence was presented refuting respondent('s) ... claim that petitioner's injuries resulted solely from the performance of his usual duties as a sanitation worker"] ). Similarly, in Matter of Starnella v. Bratton, 92 N.Y.2d 836, 677 N.Y.S.2d 62, 699 N.E.2d 421 [1998] ), this Court concluded, as a matter of law, that a slip and fall on water in a bathroom constituted an accident because it was "no less a sudden and unexpected event" than the "slip[ ] and fall[ ] on wet pavement on a rainy day" at issue in McCambridge; however, the Court held that "[a] fall down the stairs as a result of one's own misstep, without *450 more, is not so out-of-the-ordinary or unexpected as to constitute an accidental injury as a matter of law" ( id. at 839, 677 N.Y.S.2d 62, 699 N.E.2d 421 ; see Matter of Kenny v. DiNapoli, 11 N.Y.3d 873, 874, 874 N.Y.S.2d 399, 902 N.E.2d 952 [2008] ; Matter of Lassen v. Hevesi, 9 A.D.3d 780, 781, 779 N.Y.S.2d 868 [3d Dept. 2004] ; cf. ***684 Matter of Balduzzi v. McCall, 220 A.D.2d 796, 797, 631 N.Y.S.2d 943 [3d Dept. 1995] ). Critically, the Court reemphasized in Starnella that the dispositive question is whether injury was caused by " 'a precipitating accidental event ... which was not a risk of the work performed' " ( id. at 839, 677 N.Y.S.2d 62, 699 N.E.2d 421, quoting McCambridge, 62 N.Y.2d at 568, 479 N.Y.S.2d 171, 468 N.E.2d 9 [emphasis added] ).
III.
Continuing to apply the principles first set forth in McCambridge and Lichtenstein -and reiterated in our subsequent cases-we conclude that substantial evidence supports respondent's determinations that neither petitioner in the cases before us was injured as the result of an "accident" because there were no " 'precipitating accidental event[s] ... which w[ere] not a risk of the work performed' " ( Starnella, 92 N.Y.2d at 839, 677 N.Y.S.2d 62, 699 N.E.2d 421, quoting McCambridge, 62 N.Y.2d at 568, 479 N.Y.S.2d 171, 468 N.E.2d 9 ). It is well settled that " '[s]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably-probatively and logically' " ( Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 N.Y.3d 1013, 1015, 41 N.Y.S.3d 456, 64 N.E.3d 276 [2016], quoting 300 Gramatan Ave. Assoc. v. State Div. of Human Rights, 45 N.Y.2d 176, 181, 408 N.Y.S.2d 54, 379 N.E.2d 1183 [1978] ). The standard is not an exacting one; it "is less than a preponderance of the evidence ... [and] demands only that a given inference is reasonable and plausible, not necessarily the most probable" ( Matter of Ridge Rd. Fire Dist. v. Schiano, 16 N.Y.3d 494, 499, 922 N.Y.S.2d 249, 947 N.E.2d 140 [2011] [internal quotation marks and citations omitted] ). Ultimately, "[r]ationality is what is reviewed under ... the substantial evidence rule" (Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833, 313 N.E.2d 321 [1974] ). Viewing the records as a whole, respondent's determinations that petitioners did not meet their burden of proving that their incapacitation resulted from an accident sustained in service were rational.
Specifically, respondent could rationally conclude based on the records that, when injured, petitioners were acting within the scope of their "ordinary employment duties, considered in view of the particular employment in question," and that there was no sudden, unexpected event that was not an inherent risk of petitioners' regular duties ( Lichtenstein, 57 N.Y.2d at 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 ). In Matter of Kelly, the claimed accidental event was the rafter falling toward Kelly's colleague as he attempted ***685 to extricate the trapped family members. Respondent concluded that, as a police officer, Kelly was expected to assist injured persons, and that responding to emergencies is among the ordinary duties of police officers. Respondent found that, on the night in question, Kelly was instructed to respond to life-threatening emergencies, including the directive to assist injured persons at "a house that had been caved in by a falling tree." It is not disputed that Kelly was acting within the scope of his job duties *451 when he responded to that emergency call. In light of the foregoing, while a different result would not have been unreasonable, there is substantial evidence in the record to support the determination that Kelly's actions in assisting the injured residents of the house during life-threatening conditions fell within his job duties, and that his injuries did not result from a sudden, unexpected event that was not a risk inherent in his duties as a police officer (see Matter of Lenci v. DiNapoli, 92 A.D.3d 1078, 937 N.Y.S.2d 755 [3d Dept. 2012] ).
In Matter of Sica, the alleged accident was exposure to toxic fumes in the supermarket, leading to a disabling heart condition. Respondent noted that, as a participant in an emergency medical response team, Sica was fulfilling his regular duties as a firefighter in responding to the 911 call. Respondent further found that exposure to toxic chemicals was a risk for which Sica had been trained, that he had responded to a gas leak in the past, and that his job duties specifically required "working with exposure to ... fumes, explosives, toxic materials, chemicals and corrosives," the particular risk that caused Sica's injury. Inasmuch as it is not unexpected that a firefighter whose job duties required him to respond to emergency medical calls would be exposed to toxic fumes in responding to a call for difficulty breathing, respondent rationally concluded that Sica's injuries were the result of a risk inherent in his ordinary duties as a firefighter (see Matter of Huether v. Regan, 155 A.D.2d 860, 861, 548 N.Y.S.2d 114 [3d Dept. 1989], lv denied 75 N.Y.2d 705, 552 N.Y.S.2d 928, 552 N.E.2d 176 [1990] ).[3]
***686 In short, substantial evidence supports respondent's determinations that the precipitating causes of petitioners' injuries were not accidents because they did not consist of sudden, unexpected events that were not risks inherent in, respectively, Kelly's job as a police officer requiring him to assist injured persons as a first responder and Sica's job as a firefighter requiring him to provide emergency medical services. Kelly's remaining arguments lack merit and Sica's alternative arguments are not properly before us. Accordingly, the judgment in Kelly should be affirmed, with costs, and the judgment in Sica should be reversed, with costs, and the petition dismissed.
WILSON, J. (dissenting in Matter of Kelly, concurring in Matter of Sica).
*452 I concur with the majority in Matter of Sica v. DiNapoli. Because the Comptroller's determination there was a reasonable exercise of his discretion, Mr. Sica is not entitled to accidental disability benefits. However, I dissent from the court's decision in Matter of Kelly v. DiNapoli ; under any standard, his injury should be deemed accidental. Moreover, the entire statutory scheme concerning accidental and performance of duty disability desperately needs legislative attention. Even a cursory survey of case law reveals gross, inexplicable inconsistencies, largely derived from the law itself. The legislative scheme is difficult to apply in the context of inherently hazardous employment, and the legislative history offers no guidance. The courts have added to the confusion, to the point that it is almost a guessing game when trying to decide how cases will be resolved.
While awaiting legislative action, courts should focus on: (i) whether the nature of the hazard is part of the bargained-for risks of the job and (ii) whether it is truly unexpected and out of the ordinary, or rather is part of the ordinary risks of daily life. If the hazard is outside both of those realms, accidental disability applies. In that regard, it is important to remember ***687 that performance of duty injuries are compensable, but at a rate that is generally less favorable than accidental injuries. Although grey cases will always exist, the above taxonomy is straightforward and consistent with the policy objectives behind providing disability payments to injured employees.
I.
In Sica, I agree with the majority that the Comptroller's decision should be reinstated. The case turns on whether Mr. Sica-whose job involves both fighting fires and responding to medical emergencies-was acting as a firefighter or EMS worker, or whether the jobs are, in his case, inseparable. As a firefighter, job-related exposure to toxic fumes is to be expected, and firefighters receive relevant training (Mr. Sica testified as much) and are provided protective gear to don when appropriate. The same may not be true for an EMS worker who is not also a firefighter. The Comptroller's determination here-that Mr. Sica's training and experience as both a firefighter and EMS worker rendered his injury within the scope of his job, rather than an accident-is a factual determination that requires deference if supported by the record, which it is.
II.
I disagree, however, with the majority's decision as to Officer Kelly. While on duty during a hurricane when the police force generally was instructed to shelter in place, Officer Kelly was dispatched to a house partially collapsed by a tree. The tree had killed the father and trapped three family members, including young children, under debris. Consistent with protocol, Officer Kelly called for the fire department, EMS, and ambulances; however, the fire department and ambulances were reported to be two hours distant due to the hurricane. When Officers Kelly and Atchinson arrived, they heard screaming and saw that the house was partially collapsed, with water streaming through the roof. Although rescue in that situation is a job for firefighters, not police, fearing further injury to or death of the family because of the unavailability of the fire department, the officers attempted a rescue. During the rescue, a rafter suddenly gave way. To block it from falling on Officer Atchinson and the trapped girl, Officer Kelly blocked it with his forearm, saving them but permanently disabling himself.
*453 Although the hearing officer recommended approving his accidental disability request, the Comptroller denied it on the ***688 ground that responding to emergencies is an ordinary duty of police officers.
The Comptroller's rationale is unsupportable as a matter of law, because it rests on the proposition that, because police officers have emergency response as part of their jobs, anything that happens to them as part of responding to an emergency is not an "accident." Instead, to determine whether an occurrence is an accident we ask whether, in the totality of the circumstances and in light of the employee's regular job duties, it was "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Lichtenstein v. Board of Trustees of Police Pension Fund of Police Dep't of City of N.Y., Art. II, 57 N.Y.2d 1010, 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 [1982] ). Here, the confluence of factors (hurricane, family trapped in damaged house, unavailability of fire and EMS, beam falling directly on Officer Atchinson and trapped girl) is well within that definition-certainly more so than a police detective getting up from a desk chair and twisting his knee, which we held to be accidental in McCambridge v. McGuire, 62 N.Y.2d 563, 567, 479 N.Y.S.2d 171, 468 N.E.2d 9 (1984).
III.
Precedent offers little help in deciding this case. Although we have instructed courts to apply the above "commonsense" definition of accident, the oft-irreconcilable results seem anything but. A slip on a pool of water in the bathroom or on wet pavement is an accident (see Starnella v. Bratton, 92 N.Y.2d 836, 839, 677 N.Y.S.2d 62, 699 N.E.2d 421 [1998] ; McCambridge, 62 N.Y.2d at 567, 479 N.Y.S.2d 171, 468 N.E.2d 9 ), but a supervisor's fall on uneven pavement while searching for a prowler at night is not (see Fischer v. New York State Comptroller, 46 A.D.3d 1006, 846 N.Y.S.2d 482 [3d Dept. 2007] ). A trip-and-fall over a tangle of wires in a women's locker room while performing a security inspection is an accident (see Flannelly v. Bd. of Trustees of New York City Police Pension Fund, 278 A.D.2d 113, 113, 718 N.Y.S.2d 43 [1st Dept. 2000] ), but a firefighter's fall through a hole under a burning mattress is not (see Purcell v. DiNapoli, 81 A.D.3d 1069, 1070, 917 N.Y.S.2d 347 [3d Dept. 2011] ).
An officer injured when leaning over a car to place a ticket is not the victim of an accident (see Lichtenstein, 57 N.Y.2d at 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 ), but one who stumbles and falls when arising from his desk chair is (see McCambridge, 62 N.Y.2d at 567, 479 N.Y.S.2d 171, 468 N.E.2d 9 ). Injury to a police officer standing on a ladder to install a heavy bag at the police chief's request is accidental, because such work "is more ***689 appropriately performed by individuals ... such as contractors or building maintenance workers" (see Brown v. Hevesi, 19 A.D.3d 858, 859, 796 N.Y.S.2d 733 [3d Dept. 2005] ), yet a firefighter's injury caused by standing on a box of toilet paper to reach a high shelf is not accidental (see Weisensel v. Hevesi, 8 A.D.3d 880, 880, 778 N.Y.S.2d 787 [3d Dept. 2004] ). If your superior officer gives you a choice between participating in a boxing match or a tug-of-war, pick the boxing match, because injury in the former, but not the latter, qualifies as accidental (see Carr v. Ward, 119 A.D.2d 163, 165, 506 N.Y.S.2d 338 [1st Dept. 1986] ; Beachy v. Regan, 119 A.D.2d 967, 968-969, 501 N.Y.S.2d 494 [3d Dept. 1986] ).
Potholes have proved particularly precarious (compare *454 Pratt v. Regan, 68 N.Y.2d 746, 747-748, 506 N.Y.S.2d 328, 497 N.E.2d 695 [1986] ["Catching a heel on a running board and thus losing balance may be a risk of the work performed, but coming down hard upon the other foot in a pothole is not. Thus, it was a sudden, unexpected event"] with Coon v. New York State Comptroller, 30 A.D.3d 884, 885, 816 N.Y.S.2d 763 [3d Dept. 2006] ["Stepping into a pothole while directing traffic is clearly a risk of the work performed by police officers" and not accidental] and O'Donnell v. New York State & Local Ret. Sys., 249 A.D.2d 607, 670 N.Y.S.2d 631 [3d Dept. 1998] [firefighter's fall "into a hole on a torn-up sidewalk" was "result of a risk inherent in the duties of a firefighter and did not constitute an accident"). Animal feces, too, have caused quite a mess (compare Fiducia v. DiNapoli, 111 A.D.3d 1018, 974 N.Y.S.2d 198 [3d Dept. 2013] [police officer's slip down the stairs of an abandoned building occasioned by stepping on dog feces was not an accident] with Bridgwood v. Board of Trustees of New York City Fire Dept., Art. 1-B Pension Fund, 204 A.D.2d 629, 612 N.Y.S.2d 621 [2d Dept. 1994] [firefighter's slip on animal feces while dismounting from firefighting apparatus was an accident] ).
Much of the problem is due to the structure and history of Retirement and Social Security Law. § 363. In 1984, the legislature created performance of duty disability retirement benefits, and simultaneously eliminated accidental disability retirement benefits for persons hired after January 1, 1985 (L 1984, ch 661, § 1, codified at Retirement and Social Security Law § 363-c ). Subsequently, the legislature re-enacted accidental disability retirement benefits for police officers and firefighters, without explaining how the two tiers should interact or why those injured by means of an "accident"-particularly ones of the sort that occur in everyday life, such as ***690 slipping, tripping and falling-should receive greater benefits than officers or firefighters injured when engaged in heroic efforts (see 1998 NY Laws ch 489, codified at R.S.S.L. § 444[c] ). Currently, Retirement and Social Security Law § 363 awards greater disability benefits to officers who are injured due to "accidents" than to those injured in the performance of duty, absent any accident. The results often defy common sense: Officer Kelly would have received greater compensation if he had slipped when getting up from his chair, tripped over VCR cables in the police station, or backed into a spectator during a police-sponsored boxing match, than the majority now gives him for risking his life to save a family and his fellow officer during an unprecedented hurricane when no other help was available. Our case law consistently documents this absurd unfairness.
IV.
Ideally, the legislature would act to provide some clear rules. Given the legislative scheme as it exists, we ask two questions. First, whether persons in the employee's line of work should reasonably expect to face the sort of hazard that injured the petitioner-i.e., was it part of the bargained-for risks of the job? Police officers and firefighters have inherently dangerous jobs, and certain risks are to be expected. A police officer shot by a suspect is not the victim of an accident, nor is one who is injured by a crash in a high-speed car chase, even though we conventionally call the latter an "accident." Those are risks expected in the nature of the work, and officers contemplate and are compensated for such risks, by way of salary, benefits and performance-of-duty disability. In those cases, accidental disability should not apply. However, some risks must be outside the realm of the ordinary duties of police officers and firefighters, else first *455 responders could never suffer an accident while responding to an emergency.
Second, if the risk is outside the bargained-for risks of the job, we ask whether it is sufficiently out of the ordinary risks of everyday life to constitute an accident. In this regard, the existing case law holds that "[a]n injury occurring as the result of the petitioner's own misstep or inattention does not constitute an accident so as to qualify for benefits in accord with the provisions of this law" ( Meyer v. New York State Comptroller, 92 A.D.3d 1122, 1122-1123, 938 N.Y.S.2d 386 [3d Dept. 2012] ; see also e.g.
***691 Dilello v. DiNapoli, 83 A.D.3d 1361, 1362, 921 N.Y.S.2d 709 [3d Dept. 2011] ; Biondi v. McCall, 239 A.D.2d 837, 838, 658 N.Y.S.2d 490 [3d Dept. 1997] ). Again the case law is full of oddities. In Starnella, we concluded that an on-duty police officer's fall down a flight of stairs "as a result of [his] own misstep," was "not so out-of-the-ordinary or unexpected as to constitute an accidental injury" ( Starnella, 92 N.Y.2d at 839, 677 N.Y.S.2d 62, 699 N.E.2d 421 ), while it has been held that a firefighter whose foot gave way on a slippery substance that blended in with the roadway was injured in an accident, despite the commonplace nature of the incident (see Sammon v. DiNapoli, 97 A.D.3d 952, 953, 948 N.Y.S.2d 719 [3d Dept. 2012] ). If these cases are reconcilable, no explanation grounded in policy has been offered for the choices that courts have made. Until the legislature acts to address the standard, the test is whether the event precipitating the injury was so "unexpected, out of the ordinary" ( Lichtenstein at 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 ) as to constitute an accident.
Taken together, if the hazard falls outside of both the bargained-for risks of the job and everyday risks, the petitioner should be entitled to enhanced accidental benefits. Under this framework, Officer Kelly would receive accidental disability benefits. Applying step one, the hazard was outside of the bargained-for risks of his job. Officer Kelly is not a firefighter (if he were, the result would be different). Although police officers' duties include assisting injured persons and requesting medical assistance, entering collapsing buildings and fending off falling rafters during a hurricane when fire and EMS workers are not available is not an ordinary part of their jobs. Indeed, the uncontroverted record evidence is that Officer Kelly would not have been disciplined had he remained outside the house, leaving the family to whatever fate lay ahead. When other help is unavailable, officers may have no choice but to try to rescue people and I, for one, hope that they will feel and act as Officer Kelly did. But that is an extraordinary job hazard, not an ordinary one. As Officer Kelly testified, the protocol was to call for the fire department and maintain the perimeter until technical support arrived. He had no training in entering collapsing buildings, but he felt he "had no choice" but to try to save the family. On that day, Officer Kelly took the place of a firefighter, bearing risks of a job that was not his own.
Turning to step two, the hazard was certainly "out of the ordinary." In the ordinary course of our lives, we bend over; we rise from chairs; we walk down steps, some of which were previously visited by dogs; but we do not save lives by deflecting ***692 burning beams in collapsing homes during a hurricane-we imagine that for superheroes.
In Matter of Kelly v DiNapoli : Judgment affirmed, with costs.
In Matter of Sica v DiNapoli : Judgment reversed, with costs, and petition dismissed.
In Matter of Kelly v DiNapoli: Chief Judge DiFiore and Judges Rivera, Garcia and Feinman concur. Judge Wilson dissents in an opinion, in which Judge Fahey concurs.
In Matter of Sica v DiNapoli: Chief Judge DiFiore and Judges Rivera, Garcia, Fahey, Wilson and Feinman concur, Judge Wilson in a concurring opinion, in which Judge Fahey concurs.

A member of the New York State Police and Fire Retirement System who qualifies for accidental disability retirement benefits receives a pension that is the equivalent of 75% of the member's final average salary, less any benefits payable under the Workers' Compensation Law (see Retirement and Social Security Law §§ 363 [e] [3]; 364 [a] ). A member of the Retirement System who is disabled during the performance of duty, but not as the result of an accident, generally receives a pension constituting 50% of the member's final average salary, which is not reduced by Workers' Compensation benefits (see Retirement and Social Security Law § 363-c [b], [f], [i] ). For police officers and firefighters, this statutory structure-which was finalized in 1998, with the "Legislature ['s] ... presumed ... aware[ness] of the decisional and statute law in existence at the time of [the] enactment" (Odunbaku v. Odunbaku, 28 N.Y.3d 223, 229, 43 N.Y.S.3d 799, 66 N.E.3d 669 [2016] ), including this Court's long-established definition of "accident"-can lead to incongruous results, as the dissent notes. We do not take issue with the dissent's conclusion that the legislature should consider acting to address such results. However, we decline any suggestion that we should rewrite the statute ourselves, in a manner that would be inconsistent with the legislative policy choice to grant more generous disability benefits to police officers or firefighters injured by stepping into a pothole, or slipping on wet pavement or when getting up from a desk chair (see Matter of Pratt v. Regan, 68 N.Y.2d 746, 747-748, 506 N.Y.S.2d 328, 497 N.E.2d 695 [1986];Matter of McCambridge v. McGuire, 62 N.Y.2d 563, 568, 479 N.Y.S.2d 171, 468 N.E.2d 9 [1984] ), than to firefighters overcome by toxic fumes while fighting fires or officers injured while subduing a suspect with a gun (see Matter of Huether v. Regan, 155 A.D.2d 860, 861, 548 N.Y.S.2d 114 [3d Dept. 1989], lv denied 75 N.Y.2d 705, 552 N.Y.S.2d 928, 552 N.E.2d 176 [1990] ; Matter of Cummings v. Regan, 107 A.D.2d 968, 969, 484 N.Y.S.2d 380 [3d Dept. 1985] ).

Petitioners in McCambridge were New York City police officers who sought benefits under the Administrative Code of the City of New York. The Board of Trustees that administered their pension fund denied "accident disability pensions by a 6-6 vote and awarded ordinary disability pensions" (McCambridge, 62 N.Y.2d at 566, 479 N.Y.S.2d 171, 468 N.E.2d 9 ). Under those circumstances, "the reviewing court may not set aside the Board of Trustee's denial of accidental disability retirement resulting from such a tie vote unless 'it can be determined as a matter of law on the record that the disability was the natural and proximate result of a service-related accident' " (Matter of Meyer v. Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 N.Y.2d 139, 145, 659 N.Y.S.2d 215, 681 N.E.2d 382 [1997], quoting Matter of Canfora v. Board of Trustees Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 N.Y.2d 347, 352, 469 N.Y.S.2d 635, 457 N.E.2d 740 [1983] [emphasis added]; see Matter of Starnella v. Bratton, 92 N.Y.2d 836, 838-839, 677 N.Y.S.2d 62, 699 N.E.2d 421 [1998] ; McCambridge, 62 N.Y.2d at 568, 479 N.Y.S.2d 171, 468 N.E.2d 9 ).

We note that the Appellate Division focused on whether evidence in the record supported a finding that, given his training, Sica "could [ ]or should have recognized the danger posed in the circumstances presented" because the problem with the air quality at the scene was readily observable (141 A.D.3d at 801, 36 N.Y.S.3d 259 ; see 141 A.D.3d at 804 n. 3, 36 N.Y.S.3d 259 [McCarthy, J., dissenting]; see e.g. Matter of Manning v. DiNapoli, 150 A.D.3d 1382, 1383, 54 N.Y.S.3d 216 [3d Dept. 2017] [requiring a petitioner to establish that a hazard was not "readily observable" to obtain benefits]; Matter of Yurko v. DiNapoli, 122 A.D.3d 1047, 1048, 995 N.Y.S.2d 847 [3d Dept. 2014] [same]; Matter of DiGiacomo v. DiNapoli, 115 A.D.3d 1138, 982 N.Y.S.2d 414 [3d Dept. 2014] [same] ). However, judicial "[r]eview is limited to a consideration of the statement of the factual basis for the determination and whether, in light of the agency's own standards, the findings, supported by substantial evidence, sustained the conclusions" (Matter of Montauk Improvement v. Proccacino, 41 N.Y.2d 913, 914, 394 N.Y.S.2d 619, 363 N.E.2d 344 [1977] ). Respondent did not consider whether Sica was, or should have been, aware of the toxic fumes that injured him (cf. Kenny, 11 N.Y.3d at 874, 874 N.Y.S.2d 399, 902 N.E.2d 952 ). In any event, the requirement that a petitioner demonstrate that a condition was not readily observable in order to demonstrate an "accident" is inconsistent with our prior case law (see e.g. Starnella, 92 N.Y.2d at 839, 677 N.Y.S.2d 62, 699 N.E.2d 421 ; Pratt, 68 N.Y.2d at 747-748, 506 N.Y.S.2d 328, 497 N.E.2d 695 ; McCambridge, 62 N.Y.2d at 568, 479 N.Y.S.2d 171, 468 N.E.2d 9 ).