Matter of Angelino v New York State Comptroller (2019 NY Slip Op 07473)





Matter of Angelino v New York State Comptroller


2019 NY Slip Op 07473


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

528398

[*1]In the Matter of Joseph Angelino, Petitioner,
v
New York State Comptroller et al., Respondents.

Calendar Date: September 12, 2019

Before: Garry, P.J., Clark, Mulvey and Pritzker, JJ.


Edelstein & Grossman, New York City (Jonathan I. Edelstein of counsel), for petitioner.
Letitia James, Attorney General, Albany (William E. Storrs of counsel), for respondents.



Mulvey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's application for accidental disability retirement benefits.
Petitioner, a police officer, sustained injuries to both of his wrists while on duty. He injured his right wrist in September 2012 while involved in a foot pursuit of a burglary suspect, and he injured his left wrist in September 2013 when the floor beneath him collapsed. Alleging that he is permanently incapacitated as result of the two injuries, petitioner filed an application for accidental disability retirement benefits (see Retirement and Social Security Law § 363 [a]). After respondent New York State and Local Police and Fire Retirement System denied his application, petitioner sought a hearing and redetermination. During the hearing, the Retirement System conceded that petitioner was permanently incapacitated by the September 2012 injury to his right wrist and that the September 2013 incident was an accident within the meaning of the Retirement and Social Security Law. A Hearing Officer thereafter found that the September 2012 incident was not an accident and that petitioner had not demonstrated that he was permanently incapacitated as a result of the September 2013 accident, therefore requiring denial of petitioner's application. Respondent Comptroller adopted the Hearing Officer's findings and conclusions, and this CPLR article 78 proceeding ensued.
A person who applies for accidental disability retirement benefits bears the burden of proving that he or she "suffered an accident within the meaning of the Retirement and Social Security Law, that [he or] she is permanently incapable of resuming [his or] her employment duties, and that such disability is causally related to [his or] her [accident]," and the Comptroller's determination in this regard will be upheld if supported by substantial evidence (Matter of Keller v Regan, 212 AD2d 856, 857 [1995]; see Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [2019]; Matter of Buckley v DiNapoli, 166 AD3d 1265, 1266-1267 [2018]; Matter of Studdert v New York State Comptroller, 163 AD3d 1343, 1344 [2018]). Based on the Retirement System's concessions at the hearing, the issues before the Comptroller, and for this Court's consideration, are whether petitioner proved that the September 2012 incident was an accident and whether he proved that he was permanently incapacitated as a result of the September 2013 accident.
Turning first to the September 2012 incident, for purposes of the Retirement and Social Security Law, an accident has been defined as a "sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art II, 57 NY2d 1010, 1012 [1982] [internal quotation marks and citation omitted]; see Matter of Kelly v DiNapoli, 30 NY3d 674, 681 [2018]). In other words, "an injury-causing event is accidental when it is sudden, unexpected and not a risk of the work performed" (Matter of Kelly v DiNapoli, 30 NY3d at 682; see Matter of Stancarone v DiNapoli, 161 AD3d 144, 147 [2018]), and "the focus of the determination must be on the precipitating cause of injury, rather than on the petitioner's job assignment" (Matter of Kelly v DiNapoli, 30 NY3d at 682 [internal quotation marks, brackets and citation omitted]; see Matter of McCambridge v McGuire, 62 NY2d 563, 567 [1984]; Matter of Bell v DiNapoli, 168 AD3d 1206, 1207 [2019]).
Petitioner testified that, in September 2012, he was driving the lead car in a police pursuit of burglary suspects. The pursuit turned into a foot chase when the vehicles reached a metal vehicle gate blocking the road. Petitioner followed one of the suspects, who ran through a small patch of overgrown grass and weeds. According to petitioner's testimony, he tripped on debris in the patch of grass and fell forward, although he was unsure what exactly he had tripped over. He testified that, to stop himself from falling, he grabbed a metal pole with his right hand, which got caught on a steel hook affixed to the side of the pole, causing him to feel "a pinch" and suffer a laceration. An undated statement by petitioner, which he purports he wrote on the day of the incident, similarly attributes his right wrist injury to tripping over concealed debris in high grass and catching himself by grabbing onto a metal "fence post." Medical records describe the cause of his injury similarly. In contrast, an employer accident report and a workers' compensation C-2 form prepared the day of the incident, albeit by one of petitioner's supervisors, indicate that petitioner suffered his injury while moving aside chain link fencing to pursue a suspect through a hole in a fence; a statement given by another officer present at the time of the pursuit recounts the same story. Further, although petitioner denied having personally reviewed the addendum to his benefits application, that document also indicates that he injured himself while pushing aside a chain link fence.
The foregoing inconsistent versions of events presented a credibility issue for the Hearing Officer and, ultimately, the Comptroller to resolve (see Matter of Buckshaw v DiNapoli, 169 AD3d 1139, 1141 [2019], lv denied 33 NY3d 904 [2019]; Matter of Bodenmiller v DiNapoli, 157 AD3d 1120, 1122 [2018]), and they determined that the version of events given closer in time to the incident was the more credible one. We find unavailing petitioner's assertion that, because he testified that his undated statement was just as contemporaneous as the credited reports, the credibility determination was based on a mistake of fact; in rejecting petitioner's testimony, the Hearing Officer was equally free to disregard petitioner's self-serving assertion that the undated statement was written on the day of his injury. Furthermore, petitioner was free to call the authors of the contradictory statements as witnesses, but he did not. In any event, as petitioner concedes, pursuit of a fleeing suspect is an ordinary employment duty of a police officer (see Matter of Scofield v DiNapoli, 125 AD3d 1086, 1087 [2015]; Matter of Hunce v DiNapoli, 106 AD3d 1427, 1428 [2013]). In our view, the Comptroller could rationally conclude, as he did, that, under either circumstance, petitioner was acting within the scope of his duty and that there was no sudden, unexpected event that was not an inherent risk thereof (see Matter of Lester v New York State Comptroller, 143 AD3d 1038, 1038-1039 [2016]; Matter of Hunce v DiNapoli, 106 AD3d at 1428; Matter of Neidecker v DiNapoli, 82 AD3d 1483, 1484 [2011]; Matter of Melendez v New York State Comptroller, 54 AD3d 1128, 1129 [2008], lv denied 12 NY3d 706 [2009]).
Turning to the September 2013 accident, where, as here, there are conflicting medical opinions, "the Comptroller is vested with the exclusive authority to weigh such evidence and credit the opinion of one medical expert over another" (Matter of Solarino v DiNapoli, 171 AD3d at 1435 [internal quotation marks and citations omitted]; see Matter of Studdert v New York State Comptroller, 163 AD3d at 1345). However, the Comptroller may rely on a medical opinion only if the credited expert has articulated "a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records" (Matter of Petras-Ross v DiNapoli, 169 AD3d 1130, 1131 [2019] [internal quotations marks and citations omitted]; see Matter of Rawson v DiNapoli, 150 AD3d 1606, 1606 [2017]).
Petitioner testified that, after injuring his left wrist in the September 2013 accident, he returned to work in either late September or October; however, he was put on restricted duty in December 2013 after he failed a firearm certification using his right hand, and he retired thereafter. Although he had been training to shoot left-handed due to his right wrist injury, petitioner testified that, after the September 2013 incident, he was physically unable to hold a gun in his left hand after discharging five or six rounds. Petitioner underwent carpal tunnel release surgery on his left wrist in December 2013 but, as demonstrated by his medical records, he continued to be symptomatic thereafter despite multiple steroid injections, physical therapy and acupuncture, as well as the use of anti-inflammatory and nerve-blocking medications. When petitioner's surgeon, Neal Hochwald, could not confirm any reason for his ongoing pain, petitioner sought the services of a second board-certified orthopedic surgeon, David Benatar. Benatar testified that he began treating petitioner for his left wrist injury in May 2016,[FN1] at which time petitioner continued to complain of pain, stiffness and weakness in his left wrist, symptoms that, according to Benatar, only became worse as time progressed. Benatar opined that petitioner had recurrent or chronic carpal tunnel syndrome that could only be treated with further surgery, which would significantly decrease the function and mobility of petitioner's wrist. An electromyography test (hereinafter EMG) performed in March 2017 revealed evidence of mild to moderate sensorimotor median nerve entrapment neuropathy of the left wrist, which was consistent with Benatar's clinical diagnosis of carpal tunnel syndrome. When asked if he had an opinion as to whether petitioner was permanently disabled as a result of the September 2013 injury, Benatar opined that petitioner would not be able to perform his duties as a police officer because of the left wrist injury.
Edward Toriello, the board-certified orthopedic surgeon who conducted an independent medical examination of petitioner on behalf of the Retirement System, submitted a report concluding otherwise. According to Toriello, an examination of petitioner revealed evidence of only a resolved left wrist sprain post carpal tunnel release. Toriello noted that petitioner's range of motion in his left wrist and fingers was mostly normal with only slight limitation in the dorsiflexion of that wrist. Toriello, however, reviewed only petitioner's medical records prior to August 2015, when Toriello issued his report. Despite the Retirement System's indication that it intended to call Toriello to testify regarding the EMG of petitioner's left wrist, he did not testify, and no supplemental report was issued.
It is unquestionably within the province of the Comptroller to evaluate conflicting medical opinions and credit one expert over another, but the medical opinion relied on must be based upon, among other things, a review of all the relevant medical records. Although the record indicates that the EMG confirming median nerve entrapment was forwarded to the Retirement System, there is no indication that Toriello reviewed it. Therefore, we agree with petitioner that there is no basis upon which to conclude that Toriello's opinion would have remained unchanged in light of the EMG findings that objectively supported Benatar's diagnosis (see Matter of Baird v New York State & Local Retirement Sys., 96 AD3d 1265, 1266 [2012]; compare Matter of James v DiNapoli, 120 AD3d 859, 860 [2014]). Because the Comptroller relied upon an expert opinion that was not founded upon a review of all the relevant medical records, we conclude that substantial evidence does not support the Comptroller's determination that petitioner was not permanently disabled as a result of the September 2013 accident (see Matter of Cook v New York State Comptroller, 135 AD3d 1117, 1118-1119 [2016]; Matter of Danieu v DiNapoli, 77 AD3d 1152, 1154-1155 [2010]). Accordingly, the determination is annulled.
Garry, P.J., Clark and Pritzker, JJ., concur.
ADJUDGED that the determination is annulled, without costs, petition granted, and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Benatar also treated petitioner for his right wrist injury beginning in August 2013.