Matter of Hung-Sup Chun v DiNapoli (2021 NY Slip Op 05154)





Matter of Hung-Sup Chun v DiNapoli


2021 NY Slip Op 05154


Decided on September 30, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:September 30, 2021

532975
[*1]In the Matter of Hung-Sup Chun, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:September 9, 2021

Before:Lynch, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Schwab & Gasparini, PLLC, White Plains (Warren Roth of counsel), for petitioner.
Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for respondent.



Lynch, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for accidental disability retirement benefits.
Petitioner began working as a firefighter for the City of Yonkers Fire Department in 1993. During his employment, he was involved in a number of incidents in which he sustained injuries while performing his firefighting duties. In 2016, he filed an application for accidental disability retirement benefits based on injuries to his neck, shoulders and back resulting from incidents occurring in February 2005, February 2009, May 2010 and May 2014.[FN1] His application was initially denied. Following a hearing, the denial was upheld by a Hearing Officer, who concluded that none of the incidents constituted an accident within the meaning of the Retirement and Social Security Law. Respondent adopted the Hearing Officer's decision, and this CPLR article 78 proceeding ensued.
Initially, petitioner bore the burden of establishing that the injuries he sustained during the incidents in question were the result of an accident within the meaning of the Retirement and Social Security Law (see Matter of Selke v New York State Comptroller, 176 AD3d 1295, 1295-1296 [2019]; Matter of Cavallo v DiNapoli, 167 AD3d 1303, 1304 [2018]). Respondent's determination in this regard will be upheld if supported by substantial evidence (see Matter of Piatti v DiNapoli, 187 AD3d 1274, 1275 [2020]; Matter of Buckshaw v DiNapoli, 169 AD3d 1139, 1140 [2019], lv denied 33 NY3d 904 [2019]). The Court of Appeals has defined an accident as "a sudden, fortuitous mischance, unexpected, out of the ordinary and injurious in impact" (Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 57 NY2d 1010, 1012 [1982] [internal quotation marks and citation omitted]; see Matter of Angelino v New York State Comptroller, 176 AD3d 1376, 1378 [2019]). Stated another way, "'an injury-causing event is accidental when it is sudden, unexpected and not a risk of the work performed, but the focus of the determination must be on the precipitating cause of [the] injury, rather than on the petitioner's job assignment'" (Matter of Piatti v DiNapoli, 187 AD3d at 1275, quoting Matter of Kelly v DiNapoli, 30 NY3d 674, 682 [2018]; see Matter of Stancarone v DiNapoli, 161 AD3d 144, 149 [2018]).
With the above in mind, we turn to the incidents providing the basis for petitioner's claim for accidental disability retirement benefits. In February 2005, petitioner was attempting to exit the basement of a burning structure by climbing up a ladder to the street level. As he ascended, he struck his head on a Bilco door that had been propped open by a wooden chock but, unbeknownst to petitioner, had closed when the chock became dislodged. The impact knocked petitioner to the basement floor causing injuries to his shoulder [*2]and neck.
In February 2009, petitioner was working as a pump operator assisting firefighters who were inside a burning building maintain a constant flow of water through a pressurized hose line. He observed that the hose line was in the path of a moving ladder truck and that the water supply would be cut off if the truck ran over it. To prevent this from happening, he rushed over to move the hose line and injured his shoulder.
In May 2010, petitioner, along with other firefighters, responded to a fire at an automotive garage. Petitioner was in charge of bringing a pressurized hose line inside the building and directing the nozzle toward the source of the fire. In order to reach it, he climbed on the roof of a car that was situated on a flatbed truck and, while on the roof of the car, was struck by a highly pressurized master stream of water coming from a hole in the roof above. The master stream of water was propelled by a ladder truck that was fighting the fire from outside the structure and it hit petitioner with such force that it knocked him off the roof of the car, causing injuries to his shoulder and neck.
In May 2014, petitioner responded in full turnout gear to an evening fire at an apartment complex that he had been to many times before. As he arrived at the scene, he noticed that visibility was limited due to the large amount of smoke filling the street, but observed a large number of garbage bags lying on the sidewalk. He exited the fire truck, began attaching his air pack and walked toward the rear of the truck to prepare the hoses. As he was removing the hoses from the truck, he stepped backward and tripped over a garbage bag, injuring his shoulder.
The incidents of February 2005, February 2009 and May 2014 all arose from activities that are a regular part of the duties of a firefighter. Exiting the basement of a burning structure through a Bilco door, changing the placement of a pressurized hose line and detaching hoses from a fire truck on the street are activities that carry with them risks that are inherent in performing such duties. Moreover, the risks arising from the incidents that caused petitioner's injuries were not unexpected. Further, with regard to the February 2005 incident, it was foreseeable that the wooden chock could become dislodged causing the Bilco door to close as petitioner stated that it was most likely struck by a pressurized hose line. With regard to the February 2009 incident, it was not a surprise that a pressurized hose line laying on the ground could be run over by a fire truck as petitioner stated that this had occurred on other occasions. Likewise, tripping over a garbage bag while detaching hoses from the rear of the fire truck could also have been anticipated as petitioner was familiar with the location and observed numerous garbage bags littering the sidewalk when he arrived at the scene. In view of the foregoing, substantial evidences supports the conclusion that the February [*3]2005, February 2009 and May 2014 incidents did not qualify as accidents within the meaning of the Retirement and Social Security Law (see e.g. Matter of Witts v DiNapoli, 137 AD3d 1456, 1457-1458 [2016]; Matter of Baron v DiNapoli, 57 AD3d 1202, 1203-1204 [2008]; Matter of Pryor v Hevesi, 14 AD3d 776, 777 [2005]; Matter of Davenport v McCall, 5 AD3d 850, 851 [2004]).
We reach a different conclusion, however, with respect to the May 2010 incident in which petitioner was struck by the master stream of water while fighting a fire inside an automotive garage. Petitioner testified that the master stream of water coming from the ladder truck pumped water at an average rate of 1,500 gallons per minute. He stated that it was against standard operating procedure to have a ladder truck spray a master stream of water into a burning structure while firefighters were inside because the force could be lethal. Petitioner explained that he had no warning that the master stream of water was being utilized until he actually saw it a split second before getting hit. There is no record support for the Hearing Officer's finding that petitioner knew in advance that a master stream was being operated from the ladder truck such that he could have left the building. Under these circumstances, the event that precipitated claimant's injuries was sudden, unexpected and not a risk inherent in petitioner's regular duties as the incident would not have occurred if proper safety protocols had been followed. This is all more so given the lethal nature of the master stream. Accordingly, we find that it constituted an accident within the meaning of the Retirement and Social Security Law entitling petitioner to accidental disability retirement benefits (see Matter of Loia v DiNapoli, 164 AD3d 1513, 1515 [2018]). Consequently, that part of respondent's determination finding otherwise must be annulled.
Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as denied petitioner's application for accidental disability retirement benefits with respect to the May 2010 incident; petition granted to that extent and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.



Footnotes

Footnote 1: Petitioner also sought benefits for incidents occurring in August 1993 and May 2001, but subsequently withdrew his claim with respect to these incidents.