Matter of McQuade v New York State Comptroller (2025 NY Slip Op 01856)

Matter of McQuade v New York State Comptroller

2025 NY Slip Op 01856

Decided on March 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 27, 2025

CV-24-1437
[*1]In the Matter of Brian McQuade, Petitioner,
v
New York State Comptroller et al., Respondents.

Calendar Date:February 18, 2025

Before:Clark, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Fusco, Brandenstein & Rada, PC, Woodbury (John Hewson of counsel), for petitioner.
Letitia James, Attorney General, Buffalo (Sarah L. Rosenbluth of counsel), for respondents.

Clark, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Executive Deputy Comptroller denying petitioner's application for accidental disability retirement benefits.
Petitioner, a patrol police officer, applied for accidental disability retirement benefits claiming that he was permanently incapacitated from performing his job duties as a result of injuries sustained in an incident that occurred in March 2020. Petitioner's application was denied upon a finding that the incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363. Following a hearing, a Hearing Officer upheld the denial of the application, finding that the underlying incident and injuries sustained by petitioner arose from risks inherent in the performance of his duties as a police officer and, therefore, did not constitute an accident for purposes of accidental disability retirement. The Executive Deputy Comptroller adopted the Hearing Officer's decision, and this CPLR article 78 proceeding ensued.
We confirm. "As the applicant, petitioner bore the burden of establishing that his disability was the result of an accident within the meaning of the Retirement and Social Security Law, and [the Comptroller's] determination on that point will be upheld if supported by substantial evidence in the record as a whole" (Matter of Sammon v DiNapoli, 216 AD3d 1335, 1336 [3d Dept 2023] [internal quotation marks and citations omitted]). "An event which is a risk inherent in the work performed is not an accident for purposes of [accidental disability retirement] benefits" and, in turn, "an event that is not a risk inherent in one's job must be a sudden, unexpected occurrence in order to amount to an accident" (Matter of Bodenmiller v DiNapoli, ___ NY3d ___, ___, 2024 NY Slip Op 06234, *2 [2024] [internal quotation marks and citations omitted]). As explained by the Court of Appeals, "a precipitating event that could or should have reasonably been anticipated by a person in [petitioner's] circumstances is not an accident for purposes of [accidental disability retirement] benefits" (id. at ___, 2024 NY Slip Op 06234, *2 [internal quotation marks omitted]). Thus, "an injury which occurs without an unexpected event as the result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury" (Matter of Kelly v DiNapoli, 30 NY3d 674, 681 [2018] [internal quotation marks and citation omitted]; see Matter of Compagnone v DiNapoli, 42 NY3d 1075, 1076 [2024]). Consequently, "where the injury-causing event constitutes a risk inherent in a police officer's duties, it is not unexpected and, thus, not an accident" (Matter of Sammon v DiNapoli, 216 AD3d at 1336; see Matter of Bodenmiller v DiNapoli, ___ NY3d at ___, 2024 NY Slip Op 06234, *2; Matter of Van Wyen v New York State [*2]Comptroller, 215 AD3d 1217, 1218 [3d Dept 2023]).
Petitioner testified that, on the day of the incident, he was on routine patrol when he received a 911-generated radio assignment to respond to a residence for a "mental aided," an assignment that was a typical duty for a patrol officer. While he was en route, he was advised that the assignment was upgraded in expediency to a violent situation. Petitioner arrived first, approached the residence and made contact with the subject's parents at the front door; they advised him as to the subject's mental health diagnosis, that he was not taking his prescribed medication and that he was "high on drugs." Petitioner then saw the subject, who was yelling. Petitioner persuaded the subject to come out on to the porch and then attempted, along with another officer who had arrived, to convince the initially-compliant and calm subject to get help at the hospital. Without warning, the subject became violent, lunged at petitioner's weapon and grabbed him, causing petitioner to fall backward. A protracted violent altercation ensued between the subject, petitioner and the other officer, during which petitioner sustained multiple injuries to his head, neck, back, left hand and elbow. Petitioner later developed posttraumatic stress disorder. The subject was eventually subdued with the assistance of several additional responding officers. Petitioner did not thereafter return to work as a police officer and retired with performance of duty disability in August 2022.
Petitioner testified that answering 911 calls and gaining control of violent subjects were routine parts of his job duties as a police officer. He acknowledged that he had extensive training in responding to and de-escalating calls involving mentally ill and/or violent subjects and in using forceful arrest techniques, if necessary, which methods he employed during this incident; he acknowledged that he had responded to "hundreds or thousands" of such calls in his career. In view of the foregoing, substantial evidence supports the determination that petitioner's injuries were sustained as a result of risks inherent while performing his routine employment duties as a patrol officer — i.e., responding to emergency calls involving mentally ill and/or potentially violent subjects, as well as pursuing and gaining control of said subjects — and thus, were not the result of an accident as that term is contemplated for purposes of accidental disability retirement benefits (see Matter of Tully v Gardener, 222 AD3d 1163, 1164-1165 [3d Dept 2023], lv denied 41 NY3d 910 [2024]; Matter of Sammon v DiNapoli, 216 AD3d at 1336-1337; Matter of Van Wyen v New York State Comptroller, 215 AD3d at 1217-1218; Matter of Flannelly v Gardner, 210 AD3d 1265, 1266 [3d Dept 2022]; Matter of Fulton v New York State Comptroller, 122 AD3d 983, 983-984 [3d Dept 2014], lv denied 24 NY3d 915 [2015]). To the extent that the incident involved a precipitating event, it "could or should have reasonably [*3]been anticipated by a person in [petitioner's] circumstances" and, thus, was not an accident for purposes of accidental disability retirement benefits (Matter of Bodenmiller v DiNapoli, ___ NY3d at ___, 2024 NY Slip Op 06234, *2). Petitioner's contentions that he was being assaulted and acting defensively, while true, are unavailing, as he was performing his duties as a police officer from the inception of the incident and when he sustained his injuries.
Ceresia, Fisher, McShan and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.