Matter of United Helpers Care, Inc. v Molik (2018 NY Slip Op 05718)





Matter of United Helpers Care, Inc. v Molik


2018 NY Slip Op 05718


Decided on August 9, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 9, 2018

521862

[*1]In the Matter of UNITED HELPERS CARE, INC., Doing Business as MOSAIC, Petitioner,
v
DAVID MOLIK et al., Respondents.

Calendar Date: April 27, 2016

Before: Garry, P.J., and Mulvey, J.; Egan Jr., Aarons and

 Pritzker, JJ., vouched in.

Cappello & Linden, Potsdam (Roger B. Linden of counsel), for petitioner.
Barbara D. Underwood, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondents.



MEMORANDUM AND JUDGMENT
Mulvey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to review a determination of respondent Justice Center for the Protection of People with Special Needs denying petitioner's request to amend and seal a report of neglect.
Petitioner operates a 12-bed intermediate care facility in the Village of Morristown, St. Lawrence County, which is licensed by the Office of People with Developmental Disabilities (hereinafter OPWDD) to provide services to individuals suffering from various cognitive and physical disabilities. On the evening
of June 30, 2013, after a residence aide and residence supervisor momentarily left the facility's common living room, one of the male residents of the facility (hereinafter resident 1) engaged in inappropriate sexual contact with a female resident (hereinafter resident 2). This incident was the third time in six months that resident 1 sexually assaulted another resident.
Following the incident, respondent Justice Center for the Protection of People with Special Needs (hereinafter the Justice Center) received a hotline report alleging neglect by the residence aide and residence supervisor (see Social Services Law §§ 488, 492). The report was initially referred to the Incident Management Unit of OPWDD which, in turn, referred the report [*2]to petitioner's quality assurance investigator (see 14 NYCRR 624.5 [h] [1]; see also Social Services Law § 488 [7]). The ensuing investigation revealed that, on the night of the incident, residents 1 and 2 were in the facility's living room along with six other residents, the residence aide and the residence supervisor. At some point, the residence supervisor exited the living room to use the restroom, and the residence aide left the room to load a washing machine in a nearby laundry room. Moments later, the residence aide heard resident 2 making loud vocalizations. Upon returning to the living room, the residence aide found resident 1 on top of resident 2, embracing her about the neck and shoulders and making thrusting motions with his pelvis. The residence aide was ultimately able to physically remove resident 1 from resident 2, who sustained redness on her face and neck and was physically distraught as a result of the incident.
After conducting interviews of several staff members, the investigator concluded that there were no policies or requirements in place requiring staff to remain in the living room while residents were present there, nor was there any stipulation in resident 1's plan of care requiring that he be visually supervised at all times. Because no specific supervision requirement was violated, the allegations of neglect against the two staff members were found to be unsubstantiated. Nevertheless, the investigator made "a concurrent finding of a systemic problem in the facility" that led to the incident. Among other actions, it was recommended that petitioner immediately implement a policy prohibiting staff from leaving the living room unattended for any duration when residents are gathered there. Noting that resident 1 had displayed behavior of a similar nature towards his peers on two prior occasions, the investigator also recommended that resident 1's level of supervision be "within eyesight of staff at all times" and that his care plan be amended to include "increased safeguards/
provisions to address this trend." The facility immediately took action in accordance with these recommendations.
Upon its independent review of the matter (see 14 NYCRR 624.5 [j] [3]), the Justice Center similarly concluded that the neglect allegations against the two staff members were unsubstantiated inasmuch as they had not violated any specific supervision requirements (see Social Services Law § 493 [3] [a] [ii]; 14 NYCRR 624.5 [j] [1] [i], [ii]). However, the Justice Center then substantiated allegations of neglect against petitioner, reasoning that petitioner failed to provide clear procedures concerning staff supervision of residents in the living room and failed to adjust resident 1's care plan to increase his level of supervision after the first two incidents "of inappropriate sexual/physical contact with other residents." The Justice Center classified the finding of neglect as category four — noting that the "[f]ailure to have these policies in place exposed [resident 2] to harm or the risk of harm, but any culpability by other facility staff is mitigated by these systemic failures" — and referred the matter to OPWDD and its Oversight and Monitoring Unit to ensure that appropriate corrective action had been put in place (see Social Services Law § 493 [3] [b]; [4] [d]; [5] [c]). After the Justice Center denied petitioner's application to amend the report to unsubstantiated and seal it, petitioner requested an administrative hearing to challenge such findings.
Following the hearing, the Administrative Law Judge (hereinafter ALJ) denied petitioner's request to amend and seal the report, finding that the Justice Center had established by a preponderance of the evidence that petitioner's failure to ensure appropriate supervision of resident 1 after the first two documented incidents constituted neglect, that potential staff culpability was mitigated by systemic problems and that the Justice Center properly classified the neglect as category four. Respondent David Molik, Director of the Justice Center's Administrative Hearings Unit, adopted the ALJ's findings of fact and conclusions of law and rendered a final determination denying petitioner's request to amend and seal the substantiated category four finding of neglect.
Petitioner then brought this CPLR article 78 proceeding seeking to annul the Justice Center's determination on various grounds. Upon transfer, this Court granted the petition and annulled the Justice Center's determination, finding that, under the circumstances presented, the Justice Center lacked the statutory authority to substantiate a report of neglect against petitioner (141 AD3d 162 [2016]). The Court of Appeals reversed, holding that the relevant statutory provisions permit a finding of neglect against a facility when "a systemic problem caused or contributed to" an incident (Social Services Law § 493 [3] [b]), regardless of whether the allegations against an individual employee are substantiated (___ NY3d ___, ___, 2018 NY Slip Op 04779, *4-7 [2018]). The Court of Appeals remitted the matter to this Court for consideration of the remaining issues raised but not reached on our prior review (id. at *7). Upon consideration of such issues, we now confirm.
Initially, we reject petitioner's contention that the Justice Center failed to adequately explain the basis for its determination. It is settled that "administrative findings of fact must be made in such a manner that the parties may be assured that the decision is based on the evidence in the record, uninfluenced by extralegal considerations, so as to permit intelligent challenge by an aggrieved party and adequate judicial review" (Matter of Langhorne v Jackson, 206 AD2d 666, 667 [1994]; accord Matter of Ethington v County of Schoharie, 144 AD3d 1473, 1473-1474 [2016]; see Matter of Simpson v Wolansky, 38 NY2d 391, 396 [1975]). By incorporating the ALJ's findings of fact and conclusions of law by reference, the Justice Center adopted the ALJ's rationale for substantiating the category four finding of neglect against petitioner. "Inasmuch as these findings and rationale provide a basis from which judicial review of the determination can proceed, no more is required" (Matter of Northeastern Stud Welding Corp. v Webster, 211 AD2d 889, 890 [1995] [citations omitted]; see Matter of Lory v County of Washington, 77 AD3d 1265, 1266 [2010]; Matter of Ernst v Saratoga County, 251 AD2d 866, 867 [1998]).
We further find that substantial evidence supports the Justice Center's determination. "'[S]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically'" (Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1015 [2016], quoting 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]). "The standard is not an exacting one; it is less than a preponderance of the evidence and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Kelly v DiNapoli, 30 NY3d 674, 684 [2018] [internal quotation marks, ellipsis, brackets and citation omitted]; see Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011]). "If substantial evidence is present in the record, this Court cannot substitute its own judgment for that of [the Justice Center], even if a contrary result is viable" (Matter of Cauthen v New York State Justice Ctr. for the Protection of People with Special Needs, 151 AD3d 1438, 1439 [2017] [internal quotation marks and citations omitted]; see Matter of Marine Holdings, LLC v New York City Commn. on Human Rights, 31 NY3d 1045, 1047 [2018]).
Social Services Law § 488 (1) (h) defines neglect as "any action, inaction or lack of attention that breaches a custodian's duty and that results in or is likely to result in physical injury or serious or protracted impairment of the physical, mental or emotional condition of a service recipient." Neglect includes, insofar as is relevant here, the "failure to provide proper supervision, including a lack of proper supervision that results in conduct between persons receiving services that would constitute [sexual] abuse . . . if committed by a custodian" (Social Services Law § 488 [1] [h] [i]; see Social Services Law
§ 488 [1] [b]). A finding of neglect may be classified as category four when conditions at a facility "expose service recipients to harm or risk of harm [and] staff culpability is mitigated by [*3]systemic problems such as inadequate management, staffing, training or supervision" (Social Services Law § 493 [4] [d]).
The evidence adduced at the hearing established that the June 30, 2013 incident was the third incident in a six-month period in which resident 1 had engaged in inappropriate sexual conduct with a fellow resident. The investigator recounted that, in December 2012, a staff member responded to a room alarm and discovered resident 1 lying on top of a female resident in her bed making thrusting motions with his hips. Notably, in the course of a prior investigation of that matter, the investigator had discovered a psychological assessment from March 2011, when resident 1 was a resident at a different facility, indicating that resident 1 had on prior instances engaged in sexual activity with "peers" and had, at the time of the assessment, "begun to display some behaviors mentioned in previous reports" such as "attempting to go into a peers [sic] bedroom." As a result of the December 2012 incident, no changes to the facility's supervision of resident 1 were made. Instead, it was suggested that the facility develop a system to monitor its electronic surveillance devices and their effectiveness in alerting staff when they have been set off.
Three months later, in March 2013, resident 1 was observed exiting a male resident's bedroom late in the evening. When the male resident was asked what had occurred, he indicated — while making thrusting motions with his hips — that resident 1 "was on top of me." Noting that resident 1's alarm had reportedly been turned down to inaudible and highlighting the difficulties presented by the different types of monitors and alarms used in the facility, the investigator recommended that the facility implement a more integrated surveillance system to eliminate the potential for operational error. With regard to resident 1, it was recognized that this incident suggested a "pattern of behavior" that "current protective measures" had proven ineffective to prevent. Nonetheless, the investigator recommended only that the facility's care team continue to monitor resident 1's behavior and make adjustments to his plan or care as needed.
Although the investigator insisted that he could draw no conclusions from resident 1's behavior during the two prior incidents, and petitioner's witnesses characterized the June 2013 incident as unpredictable, the evaluation of evidence and the inferences to be drawn therefrom are within the exclusive province of the administrative agency (see Matter of Berenhaus v Ward, 70 NY2d 436, 443-444 [1987]; Matter of Di Maria v Ross, 52 NY2d 771, 772-773 [1980]; Matter of Roberts v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d 1021, 1024 [2017]). Here, the record provides ample support for the Justice Center's conclusion that, at the time of the June 2013 incident, petitioner was on notice of resident 1's propensity to engage in sexual contact with other residents and that its failure to ensure appropriate supervision of resident 1 following the first two incidents constituted neglect (see Social Services Law § 488 [1] [h] [i]). Substantial evidence also supports the Justice Center's conclusion that petitioner's failure to properly supervise resident 1 both "expose[d] service recipients to harm or risk of harm" and caused or contributed to the June 2013 incident, thereby constituting a category four act of neglect (Social Services Law § 493 [4] [d]; see Social Services Law § 493 [3] [b]). Accordingly, the determination as a whole is supported by substantial evidence and will not be disturbed (see generally Matter of Kelly v New York State Justice Ctr. for the Protection of People With Special Needs, 161 AD3d 1344, 1346 [2018]; Matter of Roberts v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d at 1025).
Petitioner's remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking in merit.
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.