Matter of Hastings v New York State Off. of Children & Family Servs. (2024 NY Slip Op 02436)

Matter of Hastings v New York State Off. of Children & Family Servs.

2024 NY Slip Op 02436

Decided on May 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, MONTOUR, NOWAK, AND KEANE, JJ.

248 TP 23-01620

[*1]IN THE MATTER OF SARAH HASTINGS, PETITIONER,
v
NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, NEW YORK STATE CENTRAL REGISTER OF CHILD ABUSE AND MALTREATMENT, AND ONONDAGA COUNTY CHILDREN AND FAMILY SERVICES, RESPONDENTS. 

FRESHFIELDS BRUCKHAUS DERINGER US LLP, NEW YORK CITY (ARYEH L. KAUFMAN OF COUNSEL), FOR PETITIONER. 
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (SARAH L. ROSENBLUTH OF COUNSEL), FOR RESPONDENTS.
ORRICK, HERRINGTON & SUTCLIFFE LLP, NEW YORK CITY (RENE KATHAWALA OF COUNSEL), FOR SANCTUARY FOR FAMILIES, AMICUS CURIAE. 

 Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Onondaga County [Robert E. Antonacci, II, J.], entered September 14, 2023) to review that part of the determination that petitioner's acts of child maltreatment are relevant and reasonably related to employment in the childcare field. 
It is hereby ORDERED that the determination so appealed from is unanimously modified on the law and the petition is granted by annulling that part of the determination finding that petitioner's acts of child maltreatment are relevant and reasonably related to employment in the childcare field and by directing that respondent New York State Office of Children and Family Services shall be precluded from informing a provider or licensing agency which makes an inquiry that petitioner is the subject of an indicated child maltreatment report, and as modified the determination is confirmed without costs.
Memorandum: Petitioner, at the age of 17 years old, gave birth to the subject child. Petitioner and the child's father, who is several years older than petitioner, thereafter continued an on-again, off-again relationship over the years, during which time the father subjected petitioner to severe physical and emotional domestic violence. Eventually, when the child was in her early teenage years, petitioner and the child resided together in an apartment and, during his frequent visits to the apartment, the father would scream at, use derogatory names for, and threaten petitioner in the child's presence. Later, tensions between petitioner and the father increased with a series of acrimonious incidents. Even though the father did not have legal custody of her at that time, the child began staying at the father's residence. Petitioner, fearing that the child was not safe with the father and was being unduly influenced by him, made two desperate attempts within a matter of weeks to get the child to leave the father and come with her by, among other things, physically grabbing the child.
Following an investigation into a report of suspected child maltreatment, respondent Onondaga County Children and Family Services (County respondent) determined that the allegations of inadequate guardianship were substantiated with respect to the two incidents in which petitioner made physical contact with the child and filed an indicated report with respondent New York State Central Register of Child Abuse and Maltreatment (Central [*2]Register), which is maintained by respondent New York State Office of Children and Family Services (OCFS) (collectively, State respondents). After the State respondents denied petitioner's request to amend the indicated report to unfounded and seal the report, the matter proceeded to a fair hearing before an Administrative Law Judge (ALJ). The ALJ thereafter rendered a determination finding that the County respondent met its burden of establishing by a fair preponderance of the evidence that petitioner committed the acts of child maltreatment giving rise to the indicated report. The ALJ further found that the indicated report was relevant and reasonably related to employment in the childcare field. Without providing any explanatory rationale, the ALJ proclaimed that, after considering the subject guidelines, the indicated report "remain[ed] relevant to child care issues for the following reasons: (1) number of incidents involved in report; (2) seriousness of incidents; (3) recency of report; and finally (4) lack of rehabilitative evidence."
Petitioner commenced this proceeding pursuant to CPLR article 78 seeking to annul that part of a determination finding that her acts of child maltreatment are relevant and reasonably related to employment in the childcare field. We agree with petitioner that she is entitled to that relief.
"Upon a determination made at a fair hearing . . . that the subject has been shown by a fair preponderance of the evidence to have committed the act or acts of child abuse or maltreatment giving rise to the indicated report, the hearing officer shall determine, based on guidelines developed by [OCFS] . . . , whether such act or acts are relevant and reasonably related to employment" in the childcare field (Social Services Law § 422 [8] [c] [ii]). The aforementioned guidelines published by OCFS provide 10 factors that the hearing officer may consider in making a determination, including "[t]he seriousness of the incident cited in the indicated report"; "[t]he length of time that has elapsed since the most recent incident of child abuse and maltreatment"; and "[t]he number of indicated reports of abuse and maltreatment regarding th[e] subject" (NY St Off of Children & Fam Servs Child Protective Services Manual [OCFS CPS Manual], ch 3, § C [3] [a], available at https://ocfs.ny.gov/programs/cps/manual [last accessed Mar. 26, 2024]). The guidelines provide that the hearing officer may also consider documentation produced by the subject regarding rehabilitation, under which factor the term "rehabilitation" means "[n]o apparent repeat of the act of child abuse and maltreatment"; "[e]vidence of actions taken by the [subject] to show that they are able to deal positively with a situation or problem that gave rise to the previous incident(s) of child abuse and maltreatment"; and "[e]vidence of success with professional treatment (e.g., counseling or self-help groups) if relevant" (OCFS CPS Manual, ch 3, § C [3] [a]). When, for example, a subject refuses to take responsibility for their actions, acknowledge that they endangered a child, or appreciate the seriousness of their conduct, or fails to recognize and address the causes of their detrimental behavior despite a claim of rehabilitation, the record will support a finding that the subject is likely to commit maltreatment again, which is a factor reasonably related to employment in the childcare field (see Matter of Leeper v New York State Off. of Children & Family Servs., 164 AD3d 1614, 1615 [4th Dept 2018]; Matter of Warren v New York State Cent. Register of Child Abuse & Maltreatment, 164 AD3d 1615, 1617 [4th Dept 2018]; Matter of Velez v New York State Off. of Children, 157 AD3d 575, 576 [1st Dept 2018]).
"Judicial review of a determination that the . . . acts of maltreatment are relevant and reasonably related to employment as a childcare provider 'is limited to whether the determination is supported by substantial evidence' " (Matter of Robles v New York State Off. of Children & Family Servs., 220 AD3d 798, 799 [2d Dept 2023]; see e.g. Leeper, 164 AD3d at 1614; Warren, 164 AD3d at 1617). "[S]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]). "The standard is not an exacting one; it is less than a preponderance of the evidence . . . [and] demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Kelly v DiNapoli, 30 NY3d 674, 684 [2018] [internal quotation marks omitted]). Nonetheless, "substantial evidence does not rise from bare surmise, conjecture, speculation or rumor" (300 Gramatan Ave. Assoc., 45 NY2d at 180), and "[a] mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based" (Matter of Stork Rest. v Boland, 282 NY 256, 273-274 [1940]). "Where substantial evidence exists, the reviewing court [*3]may not substitute its judgment for that of the agency, even if the court would have decided the matter differently" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018]).
Here, we agree with petitioner that, when viewed in light of the definition of "rehabilitation" provided by the guidelines, there is no support for the ALJ's determination that the record lacks rehabilitative evidence. First, the record establishes that there was "[n]o apparent repeat of the act of child abuse and maltreatment" by petitioner (OCFS CPS Manual, ch 3, § C [3] [a]). As petitioner contends, nothing in the record suggests any allegations or risk of repeat misbehavior, much less any actual repeated acts of child abuse or maltreatment, and there was "no evidence presented at the hearing" that petitioner had committed abuse or maltreatment either prior to the indicated report or during the nearly two years thereafter (Matter of Hattie G. v Monroe County Dept. of Social Servs., Children's Servs. Unit, 48 AD3d 1292, 1294 [4th Dept 2008]; cf. Leeper, 164 AD3d at 1614-1615).
Second, the record establishes that petitioner had taken actions to show that she "[is] able to deal positively with [the] situation or problem that gave rise to the previous incident(s) of child . . . maltreatment" (OCFS CPS Manual, ch 3, § C [3] [a]). As petitioner contends, the ALJ failed to consider the evidence of psychological rehabilitation showing that she could deal positively with the trauma she suffered as a result of the domestic violence inflicted upon her by the father, which precipitated the indicated report. Petitioner's marriage and family therapist submitted a letter explaining that petitioner had suffered from post-traumatic stress disorder "as a result of the relationship" with the father, but that petitioner "ha[d] made an enormous amount of progress and ha[d] reached her treatment goals," and "in no way presented as an unfit parent" during the course of her treatment. The psychologist who performed a comprehensive evaluation and testing of petitioner opined that, despite having been "aggressively abused" by the father, there was no indication that petitioner harbored "resentments toward others," petitioner showed "no defensiveness or tendency to distort the facts of the situation," and petitioner scored "unusually low" on the potential for abuse scale, which demonstrated that petitioner had "none of the characteristics, personal status or problems with the child or family members that would raise the question of abusive potential on her part." Petitioner also had a "significantly elevated score on the scale indicating . . . the tendency to maintain emotional stability and to adequately deal with interpersonal exchanges." Moreover, the ALJ ignored petitioner's testimony about her improved ability to deal positively with emotionally challenging situations and the letters from other individuals attesting to petitioner's ability to properly parent the child. The record therefore indisputably establishes that petitioner is able to deal positively with the situation or problem that gave rise to the indicated report.
Third, the record contains uncontroverted evidence of "success with professional treatment" (OCFS CPS Manual, ch 3, § C [3] [a]). In addition to the participation of petitioner and the child in a creative arts therapy program that helps heal and strengthen domestic violence survivors and their children, petitioner's marriage and family therapist opined that petitioner—whose treatment also focused on her relationship with the child by assessing her capacity to be a healthy, emotionally-present parent—had made progress, had reached her treatment goals, and did not present as an unfit parent.
To summarize with respect to the rehabilitation factor, the uncontroverted evidence in the record establishes that petitioner took responsibility for her actions and acknowledged that she endangered the child (cf. Matter of Garzon v New York State Off. of Children & Family Servs., 85 AD3d 1603, 1604 [4th Dept 2011]), and that she rehabilitated herself by successfully attending professional therapy and addressing the causes of her detrimental behaviors (cf. Leeper, 164 AD3d at 1615; Warren, 164 AD3d at 1617). The ALJ's determination that petitioner failed to rehabilitate herself is therefore not supported by substantial evidence.
Next, we agree with petitioner that the other three factors upon which the ALJ apparently relied do not provide the requisite substantial evidence to support his determination that petitioner's acts of maltreatment remain relevant and reasonably related to employment in the childcare field. Neither the "number of incidents involved in [the] report" nor the purported "seriousness of the incidents" support the ALJ's determination. As petitioner contends, none of the evidence indicated that petitioner acted with any malice toward the child, and the ALJ "never explicitly found that petitioner intended" to harm the child (Matter of Parker v Carrión, 80 [*4]AD3d 458, 459 [1st Dept 2011]). Moreover, the ALJ noted that the child was not physically injured as a result of the incidents, which occurred within a matter of weeks as part of a single continuing dispute about the child's residence and safety, and there was "no evidence presented at the hearing indicating that the [child] received medical treatment . . . , or that petitioner had used [similar forceful tactics] on any other occasion" before or after the subject incidents (Hattie G., 48 AD3d at 1294). To the extent that the recency of the indicated report had any relevance here, the ALJ arbitrarily excised that factor from its context by completely ignoring petitioner's rehabilitative efforts in the interim (cf. Leeper, 164 AD3d at 1614-1615).
We further agree with petitioner that the ALJ failed to "sufficiently address[ ] the [other] relevant guideline factors" (Matter of Frank C. v Poole, 214 AD3d 433, 434 [1st Dept 2023], lv denied 39 NY3d 915 [2023]; cf. Matter of Adalisa R. v New York State Off. of Children & Family Servs., 190 AD3d 436, 437 [1st Dept 2021]). Most significantly, the ALJ overlooked "[t]he relevant events and circumstances surrounding [petitioner's] actions and inactions as . . . relate[d] to the indicated report" (OCFS CPS Manual, ch 3, § C [3] [a]). The record indisputably establishes that petitioner acted out of desperate concern about the child's safety in the care of the father, a person who had an unmitigated long-term history of engaging in severe domestic abuse against petitioner. The record further establishes that the child suffered no physical injuries as a result of petitioner's actions (see OCFS CPS Manual, ch 3, § C [3] [a]). The ALJ also ignored petitioner's prior demonstrated success as a substitute teacher (see OCFS CPS Manual, ch 3, § C [3] [a]).
Based on the foregoing, we conclude that substantial evidence does not support the ALJ's determination that the acts of child maltreatment are relevant and reasonably related to employment in the childcare field (cf. Leeper, 164 AD3d at 1614-1615; Warren, 164 AD3d at 1617; see generally Hattie G., 48 AD3d at 1292-1294). We therefore modify the determination and grant the petition by annulling that part of the determination finding that petitioner's acts of child maltreatment are relevant and reasonably related to employment in the childcare field and by directing that OCFS shall be precluded from informing a provider or licensing agency which makes an inquiry that petitioner is the subject of an indicated child maltreatment report (see Social Services Law § 422 [8] [c] [ii]).
Entered: May 3, 2024
Ann Dillon Flynn
Clerk of the Court